JACOBS, Respondent, vs. WISCONSIN NATIONAL LIFE INSURANCE COMPANY, Appellant.

*January 13—February 1, 1916.*

*Contracts: Validity: Corporations: Powers: Life insurance companies: Sale of "profit-sharing bonds:" Consideration: Rescission by purchaser.*

1. A contract is not to be condemned merely because it is ingenious, nor unless it contravenes some rule of positive law or conflicts with public policy.

2. All stock corporations, when not expressly or by implication forbidden to do so, have by necessary inference general power to make contracts furthering the objects of their creation.

3. The issuance and sale by a domestic life insurance company of a limited number of "profit-sharing bonds," wherein the company agreed to set apart annually from its earnings and place in a special fund one dollar for each thousand dollars of insurance outstanding and in force, and to divide the fund annually among the purchasers of the bonds for thirty years,—such fund to be taken only from the expense charges collected as part of the annual premiums paid to the company for insurance; the proceeds of the sales of the bonds to be used for the promotion of the company's business of life insurance; and the company assuming no other liability or obligation upon the bonds,—was within the general power of the corporation to make contracts; and there being nothing therein contrary to any statute or to public policy, such bonds are valid.

4. The mere fact that such bonds are a speculative investment for the purchaser does not render them invalid.

5. Such bonds being valid, a purchaser thereof received a legal consideration for his money and, in the absence of fraud or mistake, cannot enforce a rescission of the contract or a return of his money.

Appeal from a judgment of the circuit court for Dodge county: Martin L. Lueck, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Weed & Hollister,* and oral argument by *H. I. Weed.*

*Charles D. Smith,* for the respondent.

Timlin, J. The defendant is a life insurance company organized under ch. 89, Wisconsin Statutes. The articles of incorporation provided that the business of the corporation should be (1) to make insurance upon the lives of individuals, and every insurance appertaining thereto or connected therewith; (2) to grant, purchase, and dispose of annuities; (3) to insure persons against physical disability or death caused by accident or disease and to issue such contracts either independently or in conjunction with life risks; (4) to invest and reinvest the funds of the corporation, purchase and hold real estate for the use and convenient transaction of its business; and (5) to enjoy all the powers, privileges, and rights conferred upon domestic life insurance companies and be subject to all the restrictions, regulations, and obligations imposed upon such companies by the laws of the state of Wisconsin. The capital stock was fixed at $100,000, divided into 1,000 shares of $100 each. Contracts of insurance granted by the defendant were to be issued upon the plan of nonparticipation in profits with or without premium reductions, the insurance was to be upon the legal reserve basis, and the reserve required by the tables of mortality approved for that purpose was to be maintained so as to guarantee the policies at maturity.

Defendant issued what is called a profit-sharing bond, which was in substance a contract to set apart annually from

the earnings of the company and place in a special fund a sum of money equal to one dollar for each one thousand dollars' worth of insurance outstanding and in force. A number of profit-sharing bonds were issued and sold for a present cash payment of $150 each. The number of these bonds to be issued was limited to 2,000. The proceeds of these sales were to be used for the promotion of defendant's business of life insurance in the several states, territories, and countries to which the company might be admitted. The purchaser in accepting the bond did so with the express understanding and agreement that the company assumed no liability or obligation other than the duty to set apart annually one dollar for each thousand dollars of insurance outstanding and in force and to divide this annually among the purchasers of these bonds for a period of thirty years. The fund to be so raised and divided was to be taken exclusively and only from the expense charges levied and collected with and as a part of the annual premiums paid to the company for insurance. It is apparent that this is a device to raise money for the promotion and extension of defendant's legitimate business; that it in no way affects the ability of the defendant to respond for death losses or impairs the legal reserve required. At the same time it is apparent that it is a very speculative investment on the part of the purchaser of the bond. He may in thirty years receive many times the amount paid for the bond or he may receive little or nothing.

In this action to recover back the amount paid for four of these bonds the learned circuit judge directed judgment for the plaintiff apparently on the ground that the bonds were void, consequently the plaintiff received nothing for his money. The conclusion of law covering this decision of the circuit court is as follows: "that said so-called 'profit-sharing bonds' are void for want of authority in the defendant life insurance company to issue and sell the same." We are referred to no statute which forbids, either expressly or by im-

plication, the making of such contract by a corporation like defendant. On the contrary we have in this state sec. 1947, sub. 4, making the provisions of ch. 86 of the Statutes applicable to insurance companies. Ch. 86 relates to the organization, powers, and dissolution of corporations generally. We also have in ch. 85 general powers conferred upon every corporation to make all contracts necessary and proper to effect its purposes and conduct its business. This last chapter also confers on each corporation of this state power "to mortgage its revenues to secure the payment of its debts or to borrow money for the purposes of the corporation." The only ground assigned for holding the so-called income bond void is the speculative character of the investment therein. This affects only the obligee in the bond. It is not speculative but quite certain as regards the obligor insurance company. The transaction amounts to this: the insurance company, instead of waiting for profits to accumulate and using these profits to promote and advance its insurance business, makes a contract whereby these anticipated profits are sold as above indicated and thereby money is at once and in the early years of the insurance company available with which to advance its insurance business, the purchaser of the bond taking his chances of reimbursement out of profits created or aided by his own money and the insurance company assuming no other obligation than that of setting apart annually for a limited period from the annual premiums collected for life insurance one dollar for each thousand dollars of life insurance outstanding and in force. A contract is not to be condemned merely because it is ingenious. *Govier v. Brechler,* 159 Wis. 157, 161, 149 N. W. 740. Nor unless it contravenes some rule of positive law or conflicts with public policy. *Shepard v. Pabst,* 149 Wis. 35, 45, 135 N. W. 158. All stock corporations, when not expressly or by implication forbidden to do so, have general power to make contracts furthering the objects of their creation. This authority exists by necessary

inference from the general powers conferred on the corporation to do business. *Blunt v. Walker,* 11 Wis. 334; *Clark v. Farrington,* 11 Wis. 306; *Winterfield v. Cream City B. Co.* 96 Wis. 239, 71 N. W. 101; *Eastman v. Parkinson,* 133 Wis. 375, 113 N. W. 649.

We discover nothing in the contract here in question contravening any statute, conflicting with the objects or purposes of the corporation, or offending against public policy, and therefore the bond must be held to be valid. If the bond is valid the plaintiff received a legal consideration for his money, and, no fraud or mistake being proven, he cannot enforce a rescission of the contract or a return of his money. It follows that the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

*By the Court.*—Judgment reversed, with directions to dismiss the complaint.