STEFFEN, Plaintiff and Respondent, vs. LITTLE, Defendant: PARK HILL TRUCKING COMPANY, Defendant and Appellant. [Two cases.]

*November 6—December 3, 1957.*

352

For the appellant there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

For the respondents there was a brief by *Sigman, Sigman & Shiff* of Appleton, and oral argument by *Abraham Sigman.*

BROWN, J. The sequence of events here is important. In 1952 and for many preceding years the statutes of Wisconsin contained the following provision:

"85.05 AUTOS, FOREIGN LICENSED. (3) The use and operation by a nonresident of a motor vehicle over the highways of Wisconsin shall be deemed an irrevocable appointment binding upon him, his executor, administrator, or personal representative by such nonresident of the commissioner of the motor vehicle department to be his true and lawful attorney upon whom may be served all legal processes in any action or proceeding against him, or his executor, administrator, or personal representative, growing out of such use or operation resulting in damage or loss to person or property, and said use or operation shall be a signification of his agreement that any such process against him, or his executor, administrator, or personal representative, which is so served shall be of the same legal force and validity as if served on him personally, or his executor, administrator, or personal representative. The commissioner as such attorney shall upon being served with such process forthwith mail by registered mail a copy of the papers served to such nonresident at the address given in the papers so served. It shall be the duty of the party or his attorney to certify in the papers so served that the address given therein is the last-known address of the nonresident to be served. . . ."

Effective August 12, 1953, the 1953 legislature enacted ch. 593 of the session laws which begins:

"Section 1. 85.05 of the statutes is repealed and re-created to read" etc., etc.

The re-created sec. 85.05, Stats., contains nothing repeating or replacing sec. 85.05 (3). Provisions for substituted or constructive service are completely lacking.

The collision between the vehicles of plaintiff and defendant took place October 9, 1953.

On November 26, 1953, by ch. 648 of the session laws, the legislature created sec. 85.05 (6), Stats., which, in substance, was a re-enactment of the old sec. 85.05 (3).

On May 12, 1954, plaintiff commenced the present action against defendant by substituted service of summons and complaint on the commissioner of motor vehicles, which the commissioner mailed to defendant at its home address all in conformity with the provisions of sec. 85.05 (6), Stats. On June 18, 1954, defendant appeared specially and challenged the efficacy of such service of process.

Effective August 23, 1955, the legislature enacted ch. 584, Laws of 1955, creating sec. 85.05 (8), Stats., as follows:

"Subsections (6) and (7) (which in substance were formerly section 85.05 (3) and (4), statutes of 1951, were unintentionally repealed by chapter 593, Laws of 1953, and were re-created by chapter 648, Laws of 1953) are hereby declared to be retroactive to August 13, 1953."

May 20, 1957, the trial court denied defendant's motion to vacate the constructive service of process and dismiss the action.

It must be conceded that in ch. 593, Laws of 1953, sec. 85.05 (3), Stats., as quoted above, was omitted from the re-creation by inadvertence. Therefore, the plaintiff submits, it was not really repealed at all. Though, thereafter,

the number, sec. 85.05 (3), identifies legislation dealing with completely different questions and provisions for constructive service on nonresident motorists appeared nowhere in any form nor by any statute number in the published statutes at the time of the accident, plaintiff submits that from and after August 12, 1953, the legislation formerly known as sec. 85.05 (3) continued in existence and effect and was available for plaintiff's use.

The argument has two things the matter with it; first, the assumption that the 1953 legislature did not intend to repeal sec. 85.05 (3), Stats. Of course it intended the repeal. It expressly said it was repealing the whole of sec. 85.05. What it did not intend was the omission of that subsection from the re-creation. Not that this makes any real difference because, second, if the repeal itself had been by error it was, nevertheless effective. Even where there is no express repeal but merely a legislative declaration that a statute "is amended to read:" any provision of the original statute not found in the statute, as amended, is repealed. *State v. Ingersoll* (1864), 17 Wis. *631, *634; *Bentley v. Adams* (1896), 92 Wis. 386, 391, 66 N. W. 505.

We held in *Kugler v. Milwaukee* (1932), 208 Wis. 251, 255, 242 N. W. 481, and *Cavadini v. Larson* (1933), 211 Wis. 200, 208, 248 N. W. 209, and now repeat, a clear and plain declaration in the enacting clause that a statute is repealed must be given effect according to its terms.

So we conclude that between the repeal of sec. 85.05 (3), Stats., on August 12, 1953, and its substantial re-enactment on November 26, 1953, as sec. 85.05 (6), Wisconsin had no statutory provision making service of process upon the commissioner of motor vehicles constructive service, or a part of constructive service, upon a nonresident driver or his employer.

Appellant does not challenge the constitutionality of sec. 85.05 (6), Stats., nor the constitutionality of substituted

service as there permitted, in the usual case. It does insist that respondent's compliance with that statute, which did not exist at any time when appellant's truck was using Wisconsin highways, does not subject appellant to the jurisdiction of the Wisconsin court.

If the service made May 12, 1954, upon the commissioner, followed by his transmission of the summons and complaint to the defendant, is good service upon the latter, it must be because sec. 85.05 (6), Stats., is applicable to a cause of action which came into being before sec. 85.05 (6) was enacted. Appellant submits that the statute has no such retroactivity and to give retroactivity to it violates the constitutional guarantee of due process of law.

The mere fact that a statute applies to a civil action retrospectively does not render it unconstitutional. *Cohen v. Beneficial Industrial Loan Corp.* (1949), 337 U. S. 541, 554, 69 Sup. Ct. 1221, 93 L. Ed. 1528, with cases there cited.

A North Carolina statute, passed after a bank (represented in liquidation by the plaintiff) obtained judgment against defendant, permitted defendant to set off against the judgment the circulating notes of the bank which defendant had procured after the judgment. The United States supreme court held:

"It may be said that this legislation is retroactive; and, as applied to the case before us, it is so. But there is no constitutional inhibition against retrospective laws. Though generally distrusted, they are often beneficial, and sometimes necessary. Where they violate no provision of the constitution of the United States, there exists no power in this court to declare them void." *Blount v. Windley* (1877), 95 U. S. 173, 180, 24 L. Ed. 424.

While a suit was pending, in which plaintiff sued to recover from defendant the purchase price of securities sold in violation of a Minnesota Blue Sky Law, the Minnesota

legislature enacted an amendment of the statute of limitation. Defendant had a good defense under the statute before amendment. The Minnesota supreme court held the amended statute valid and applicable to the pending case. Affirming on appeal, the supreme court of the United States held that a state statute may repeal or extend a statute of limitations, *even after a right of action is barred thereby,* restore to plaintiff his remedy, and divest defendant of the statutory bar. As a matter of constitutional law, the view of the United States supreme court is that statutes of limitation go to matters of remedy, not to destruction of fundamental rights. The Fourteenth amendment does not make an act of state legislation void merely because it has some retrospective operation. *Chase Securities Corp. v. Donaldson* (1945), 216 Minn. 269, 13 N. W. (2d) 1, 325 U. S. 304, 65 Sup. Ct. 1137, 89 L. Ed. 1638.

While statutes in general are construed prospectively the rule is otherwise with statutes whose operation is procedural or remedial. In *State ex rel. Davis & Starr Lumber Co. v. Pors* (1900), 107 Wis. 420, 427, 83 N. W. 706, we quoted Chancellor Kent as follows:

" 'This doctrine [prospective construction of statutes only] is not understood to apply to remedial statutes, which may be of a retrospective nature, provided that they do not impair contracts or disturb absolute vested rights, and only go to confirm rights already existing and in furtherance of the remedy, by curing defects and adding to the means of enforcing existing obligations.' "

In *Pawlowski v. Eskofski* (1932), 209 Wis. 189, 192, 244 N. W. 611, we said: "It is true as a general rule that statutes that are remedial only are retroactive, . . .." In *State ex rel. Schmidt v. District No. 2* (1941), 237 Wis. 186, 190, 295 N. W. 36, we said: ". . . it is a fundamental rule of statutory construction that a retroactive operation is not to be given so as to impair an existing right or obligation *other-*

*wise than in matters of procedure,* unless that effect cannot be avoided without doing violence to the language of the enactment." (Emphasis supplied.)

The present cause of action arose when the collision took place. The substantive rights of the parties came into being at that time. Sec. 85.05 (6), Stats., confirms existing rights and furthers the remedy by curing defects and adding to the means of enforcing existing obligations. The quotation from Chancellor Kent in the *State ex rel. Davis & Starr Lumber Co. Case, supra,* fits the function of the statute which we are now considering. But without such persuasive authority we have our own authoritative precedent that sec. 85.05 (6),—the *alter ego* of the former sec. 85.05 (3),— is a procedural statute, for this court said so in *Waddell v. Mamat* (1955), 271 Wis. 176, 179, 72 N. W. (2d) 763: "The right granted under sec. 85.05 (3), Stats. 1951, is not a right of action but a procedural right."

Sec. 85.05 (6), Stats., contains no language which enables us to hold that causes of action existing when it was enacted are not within its scope, and we conclude that it is to be interpreted in accordance with the general rule, that remedial and procedural statutes are retroactive unless the legislature has declared otherwise and they do not impair contract rights or vested rights.

Obviously, no contracts are involved here. As to vested rights, there are none in a particular remedy or method of procedure. *Ogdon v. Gianakos* (1953), 415 Ill. 591, 597, 114 N. E. (2d) 686, 690; *Kessler v. Thompson* (N. D. 1956), 75 N. W. (2d) 172, 178.

16 C. J. S., Constitutional Law, p. 1248, sec. 256, summarizes its collection of cases on the subject thus:

"Except that the remedy is one that is expressly protected by a constitutional provision, there is no vested right to a particular remedy, and existing remedies may be changed or abolished, provided that a substantial remedy remains."

The *Chase Securities Corp. Case, supra,* is a striking illustration that a defendant has no vested right in a remedial statute.

*Ogdon v. Gianakos, supra,* presents many points of similarity to the case at bar. In that action the defendant, while a resident of Illinois, had an auto accident after which he left Illinois and resided elsewhere. There was then no Illinois statute providing for substituted service in such a case but such a provision was enacted after defendant had left the state. Plaintiff complied with the newly enacted provisions of the statute by serving process on the secretary of state and giving notice to defendant. Defendant challenged the jurisdiction of the court. The supreme court of Illinois held the statute was a procedural one, saying (415 Ill. 596, 114 N. E. (2d) 689) :

"The statute in question is certainly not a part of that law which creates, defines, or regulates rights. It delineates the proper method of obtaining jurisdiction in specific instances. Any means of acquiring jurisdiction is properly denominated process, and includes the serving of summons. The issue or service of process is not what makes one a party to a suit. It is merely a step in obtaining jurisdiction of his person after he is a party to a suit. (*Alexander Lumber Co. v. Kellerman,* 358 Ill. 207 [192 N. E. 913].) The right or cause of action exists when a person or his property is injured or damaged by the use of a motor vehicle upon the Illinois highways. Section 20a of the Motor Vehicle Act sets forth the manner of serving process on the nonresident operator of that motor vehicle, or upon the operator who, at the time of an accident, was a resident of Illinois but has since become a nonresident. It is a part of the machinery to be employed in obtaining a redress for such injury or damage. Accordingly, it is a part of the law of procedure and not a part of substantive law."

Then, after saying that there is no vested right in any particular remedy or mode of procedure, the Illinois court continued (415 Ill. 597, 114 N. E. (2d) 690) :

"It merely establishes a new mode of obtaining jurisdiction of the person of the defendant in order to secure existing rights, which are unaffected by this amendment. As a change which affects merely the law of procedure, there can be no valid objection to enforcing the existing cause of action under this new procedure."

The retroactive feature of 85.05 (6), Stats., gives us no concern here as being a violation of either contract or vested rights.

Retroactivity, however, presents a difficulty in the provision that, by operating his automobile on the Wisconsin highway, the defendant appointed the commissioner his attorney upon whom legal process might be served in actions growing out of the use of the motor vehicle in this state resulting in damage or loss. Courts in other states have seriously questioned that the power of a legislature "would extend to making such a statutory power of attorney retroactive." *Duggan v. Ogden* (1932), 278 Mass. 432, 180 N. E. 301, 82 A. L. R. 765; *Schaeffer v. Alva West & Co.* (1936), 53 Ohio App. 270, 4 N. E. (2d) 720. An Illinois court expressed the problem very well in saying:

"It would seem illogical to conclude that an Illinois motorist could constructively appoint such an attorney by action of law, at a time ·when no such law was in existence." *Sanders v. Paddock* (1951), 342 Ill. App. 701, 705, 97 N. E. (2d) 600.

Certainly, in our case, the Oklahoma motorist did nothing after sec. 85.05 (6), Stats., was enacted which could result either in his appointment of an attorney in this state or in his agreement that personal service of process on that attorney is equivalent to personal service on him.

This difficulty does not appear to us to be insuperable. In the first Wisconsin case which sustained the constitu-

tionality of the statute asserting that jurisdiction of the person of the nonresident motorist could be obtained by constructive service of process, *State ex rel. Cronkhite v. Belden* (1927), 193 Wis. 145, 211 N. W. 916, 214 N. W. 460, we approved the device of the motorist's implied consent to the appointment of the state official as his attorney upon whom the process might be served. But, speaking through Mr. Justice ROSENBERRY, we said, page 154, that while precedent had relied on the implied consent of the motorist to sustain jurisdiction, we saw no reason why it might not be supported upon another theory. Elaborating this, he said, page 155:

"If the state may designate a person who falls within certain categories, but has in fact no authority from his principal to receive service, as a proper person upon whom service may be made, we see no reason why it may not likewise designate a public official as such person. The defendant no more consents in the one case than in the other. The statute does not attempt to provide a method for securing jurisdiction over the person of the defendant in respect to controversies other than those which arise out of the operation of the automobile within the state. While it is true that constitutional rights may not be subordinated to administrative convenience, we perceive no just reason why a nonresident coming within the state, using the special facilities provided by the state and afforded the protection of its laws, may not be subjected to the jurisdiction of the state in respect to acts done by him in violation of its law and be compelled to respond in damages for wrongs done its citizens while within the state in the operation of his automobile."

And further, on page 157:

"Power to regulate is a basis of jurisdiction of equal dignity, and if as an incident to the exercise of that power the licensing state requires the foreign motorist to submit himself to the jurisdiction of the state and provides for

service upon him in a manner reasonably calculated to bring home to him notice of the pendency of the suit, the regulation is reasonable and valid."

And we held, page 159:

". . . that the state has power to regulate the conduct of a foreign motorist using the highways of the state of Wisconsin, and as a proper part of such regulation may prescribe that service may be made upon him in controversies arising out of his operation of his motor vehicle within the state of Wisconsin by serving process upon the secretary of state; . . ."

Mr. Justice ROSENBERRY's conclusions concerning this basis for jurisdiction of the person were reached by the supreme court of the United States some twenty-five years later when, speaking through Mr. Justice FRANKFURTER in *Olberding v. Illinois Central R. Co.* (1953), 346 U. S. 338, 340, 74 Sup. Ct. 83, 98 L. Ed. 39, it said:

"It is true that in order to ease the process by which new decisions are fitted into pre-existing modes of analysis there has been some fictive talk to the effect that the reason why a nonresident can be subjected to a state's jurisdiction is that the nonresident has 'impliedly' consented to be sued there. In point of fact, however, jurisdiction in these cases does not rest on consent at all. See Scott, Jurisdiction over Nonresident Motorists, 39 Harv. L. Rev. 563. The defendant may protest to high heaven his unwillingness to be sued and it avails him not. The liability rests on the inroad which the automobile has made on the decision of *Pennoyer v. Neff,* 95 U. S. 714, as it has on so many aspects of our social scene. The potentialities of damage by a motorist, in a population as mobile as ours, are such that those whom he injures must have opportunities of redress against him provided only that he is afforded an opportunity to defend himself. We have held that this is a fair rule of law as between a resident injured party (for whose protection these statutes are primarily intended) and a nonresident motorist,

and that the requirements of due process are therefore met. *Hess v. Pawloski,* 274 U. S. 352."

And the Illinois court in *Ogdon v. Gianakos, supra,* said (415 Ill. 598, 114 N. E. (2d) 690):

"In the instant case, it is the fact of subsequent nonresidence that enables the plaintiff to obtain jurisdiction of the defendant by serving the secretary of state in accordance with the statute. The service depends on no consent, actual or implied, but merely upon declarations of the legislature in the valid exercise of the police power of the state."

The state of Illinois has recently adopted a statute (2 Ill. Rev. Stats. 1955, ch. 110, secs. 16 and 17) authorizing the entry of judgments *in personam* on personal service of summons outside the state in enumerated classes of cases, including torts committed within the state by nonresidents. The statute provides for the direct service of process upon the alleged tort-feasor in his home state without requiring service upon any fictitious agent within Illinois. The Illinois supreme court has upheld the constitutionality of this statute. *Nelson v. Miller* (1957), 11 Ill. (2d) 378, 143 N. E. (2d) 673. In so doing it relied on the principle behind the decision in *Olberding v. Illinois Central R. Co., supra,* that "The basis of jurisdiction was not consent; it was rather that the state was justified in making reasonable provision for redress in local courts against nonresident tortfeasors, so long as it provided reasonable notice and opportunity to be heard." (143 N. E. (2d) 678.)

If we have not already adopted this doctrine by *State ex rel. Cronkhite v. Belden, supra,* we adopt it now and recognize that jurisdiction of the nonresident tort-feasor *in personam* rests on his contact with the state through his use of the public highway and the injury he inflicts on others while so using it, and such jurisdiction may be asserted and

exercised without the intermediation of a fictitious agent. In the present case service upon the commissioner of the motor vehicle department is good, not because he has been appointed or has otherwise become the defendant's agent but because he is the person whom the legislature has designated as the person who shall receive the service and mail the papers to the defendant at his last-known address, which is a means reasonably calculated to bring home to him notice of the pendency of the suit.

Accordingly the problem in logic of a retroactive appointment of agency becomes immaterial.

We conclude that though sec. 85.05 (3), Stats. 1951, was repealed before the accident in question it was re-created in substance by the passage of sec. 85.05 (6), Stats. 1953, and is retroactively applicable to an accident which occurred in the interim, and we further conclude that service of process against the nonresident made upon the official designated by the state to receive such service, with notice thereof sent to the nonresident as the statute prescribes, is good service upon the nonresident motorist and results in jurisdiction *in personam.*

The trial court correctly denied the defendant's motion to set aside and vacate the service of the process and to dismiss the action.

*By the Court.*—Orders affirmed.