CITY OF MADISON, a Wisconsin municipal corporation, Stephen E. Strategos and Richard T. Ahner, on behalf of themselves and of all electors, residents and owners of property in the Town of Madison opposed to incorporation of the Town as a City, and State of Wisconsin ex rel. City of Madison, Stephen E. Strategos and Richard T. Ahner, Plaintiffs-Respondents,

v.

TOWN OF MADISON, a body corporate, Thomas C. Solberg, Robert H. Waldron, Donald C. Pierstorff and Donna L. Meier, in their official capacities as officers of the Town of Madison and in their individual capacities as electors, residents and owners of property in the Town of Madison, and on behalf of themselves and all other electors, residents and owners of property in the Town of Madison in favor of incorporation of the Town, the Honorable Douglas La Follette, Secretary of State of the State of Wisconsin, and County of Dane, Defendants-Appellants. †

Court of Appeals

*No. 85–0029. Argued September 23, 1985.—Decided October 28, 1985.*
(Also reported in 377 N.W.2d 221.)

† Petition to review pending. This petition was not decided at the time the volume went to press. Its disposition will be reported in a later volume.

For the defendants-appellants the cause was submitted on the briefs of *Richard K. Nordeng* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the defendants-respondents the cause was submitted on the brief of *Henry A. Gempeler,* city attorney, *Carolyn S. Hogg,* assistant city attorney, *James M. Voss,* assistant city attorney, and *William H. Olson,* and *Buffett, Dew, Blaney, Olson & Lasker* of Madison.

Before Gartzke, P.J., Eich, J., and Sullivan, J.

EICH, J. The Town of Madison appeals from a declaratory judgment invalidating its efforts to incorporate as a city pursuant to sec. 60.81, Stats. (1981–82).[1] The issue is whether sec. 990.001(15), Stats., enacted after the incorporation proceedings were initiated, bars the town from proceeding under sec. 60.81. We are satisfied that it does, and we therefore affirm.

Section 60.81, Stats., provides a procedure whereby a town adjacent to "a city of the first class" may incorporate as a city if its resident population exceeds 5,000 and its equalized valuation exceeds $20,000,000. The procedure is initiated by petition of a specified number of town electors and property owners. When the petition is filed with the town clerk, a referendum is scheduled and, if the majority of votes cast are in the affirmative, city status is achieved upon certification of the election results to the Secretary of State. A petition, in proper form, was filed on January 16, 1984, and a referendum was scheduled by resolution of the town board shortly thereafter. The City of Madison then sued to enjoin further proceedings.

There is no question that the town meets the population and valuation requirements of sec. 60.81, Stats. The dispute centers around whether or not the City of Madison, which lies adjacent to the town, is a city of the first class.

Section 62.05, Stats., divides cities into four classes by population. Cities of the first class are defined by sec.

---

[1] Section 60.81, Stats., has since been renumbered to sec. 66.012, Stats. Sec. 11, 1983 Wis. Act 532. For consistency with historical references, we will refer to it as sec. 60.81 in this opinion.

62.05(1)(a) as those with a population of 150,000 or more. Section 62.05(2) provides that "[c]ities shall pass from one class to another when . . . the change in population so requires, when provisions for any necessary changes in government are duly made, and when a proclamation of the mayor, declaring the fact, is published according to law."

Section 990.001(15), Stats., as created by 1983 Wis. Act 135, states: "If a statute refers to a class of city specified under s. 62.05(1), such reference does not include any city with [the required population] unless the city has taken the actions necessary to pass into the class under s. 62.05(2)." To be understood, sec. 990.001(15), which, on its face, appears to do no more than restate the provisions of sec. 62.05(2), must be viewed in the context of litigation involving the town's neighboring municipality, the Town (now City) of Fitchburg, in the early 1980's.

Fitchburg, like the Town of Madison, is adjacent to the City of Madison. In 1980, Fitchburg residents and electors sought to incorporate as a city pursuant to sec. 60.81, Stats. The town met the statutory population and valuation criteria. The City of Madison, however, while meeting the 150,000 population standard, had neither proclaimed its ascendancy to first class city status nor made the "changes in government" contemplated by sec. 62.05(2), Stats. The city sued to enjoin the incorporation, and the circuit court ruled that because Madison had not taken the steps required by statute (e.g., the proclamation and the law changes), it remained a city of the second class, and Fitchburg could not avail itself of sec. 60.81 as a means to incorporate as a city.[2] The supreme court re-

---

[2] Section 60.81, Stats., often referred to as "The Oak Creek Law," was enacted in 1955, primarily to resolve a long-standing dispute between the City of Milwaukee, then, as now, the only city of the first class in Wisconsin, and the adjoining Town of Oak Creek. *See City of*

versed on jurisdictional grounds, noting, however, its agreement with "the trial court's determination that . . . Madison is not a city of the first class because it has not taken the steps required by sec. 62.05(2), Stats." *In re Incorporation of Town of Fitchburg,* 98 Wis.2d 635, 644 n.3, 299 N.W.2d 199, 203 (1980) *[Fitchburg I].*

On remand, the jurisdictional defects were cured and the case went to trial. The trial court again ruled that the sec. 60.81, Stats., incorporation procedures were unavailable to the Town of Fitchburg because of Madison's second class city status. On appeal, the supreme court noted that it had, in *Fitchburg I,* "determined that Madison is not a city of the first class within sec. 62.05." *City of Madison v. Town of Fitchburg,* 112 Wis.2d 224, 236, 332 N.W.2d 782, 787 (1983) *[Fitchburg II].* The court went on to hold, however (in an opinion engendering unusually strong dissent), that Madison was, nonetheless, a city of the first class "for purposes of sec. 60.81," solely because it had reached the designated population level. *Id.* at 239, 332 N.W.2d at 789. Thus, under *Fitchburg II,* Madison was considered a city of the first class for purposes of sec. 60.81, but for purposes of the very statute creating and defining the several classes of cities (and, presumably, for

---

*Madison v. Town of Fitchburg,* 112 Wis.2d 224, 238, 332 N.W.2d 782, 788–89 (1983).

The primary means of municipal incorporation is found in secs. 66.013–66.019, Stats. That procedure requires public hearings on the proposed incorporation and a determination by the Department of Development that the town meets a variety of standards relating to homogeneity, population density, a reasonably developed community center, present and potential sources of tax revenue, necessary government services, impact on governmental problems in the metropolitan community, etc.

all other purposes as well),[3] it remained a city of the second class. Whatever the case, Fitchburg, at long last, had become a city,[4] and the City of Madison still has not taken the steps to become a city of the first class under sec. 62.05(2), Stats.

In the wake of *Fitchburg II*, the legislature passed 1983 Wis. Act 135 creating sec. 990.001(15), Stats. The law became effective February 24, 1984. By that date, Town of Madison residents and electors had circulated their petition and filed it with the town clerk, and the town board had passed a resolution scheduling an incorporation referendum for February 28, 1984. The referendum was held as scheduled, and 604 of the town's 6,199 residents voted. The vote favored incorporation by a margin of 453 to 151. The City of Madison challenged the proposed incorporation, and the trial court, applying sec. 990.001(15); concluded that Madison was not a city of the first class and that, as a result, the town could not proceed to incorporate under sec. 60.81, Stats. The court enjoined certification of the election results, and that injunction remains in effect.

■
The determinative issue is whether sec. 990.001(15), Stats., may be applied so as to defeat the town's incorporation efforts. The question is one of law which we decide *ab initio*, without paying special deference to the trial court's determination. *Sacotte v. Ideal-Werk Krug & Priester*, 121 Wis.2d 401, 405, 359 N.W.2d 393, 395 (1984).

■
The general rule of statutory construction is that statutes are construed as relating to future and not to

---

[3] The trial court noted that there are some 350 references to city classification in the statutes.

[4] Justice Abrahamson, in her dissent in *Fitchburg II*, referred to the vigor and determination with which many Fitchburg residents pursued incorporation. *Id.* 112 Wis.2d at 241–42, 332 N.W.2d at 790 (Abrahamson, J., dissenting).

past acts. However, if a statute is remedial or procedural, rather than substantive in nature, it will be given retroactive application unless there is a clearly expressed legislative intent to the contrary or unless retroactive application will disturb contracts or vested rights. *Boggs v. Morden,* 117 Wis.2d 773, 775, 345 N.W.2d 490, 491 (1984); *Gutter v. Seamandel,* 103 Wis.2d 1, 17, 308 N.W.2d 403, 411 (1981).

The distinction between substantive and procedural laws is relatively clear. If a statute simply prescribes the method—the "legal machinery"—used in enforcing a right or a remedy, it is procedural. *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 332 (Iowa 1976). If, however, the law creates, defines or regulates rights or obligations, it is substantive—a change in the substantive law of the state. *Guste v. Burris,* 417 So.2d 445, 450 (La. App. 1982), *rev'd on other grounds,* 427 So.2d 1178 (La. 1983). A remedial statute is one which is "related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing." *Gormley v. General Motors Corp.,* 336 N.W.2d 873, 876–77 (Mich. App. 1983). These definitions, with minor modifications, are used in most, if not all, jurisdictions in which the question has arisen,[5] including Wisconsin. *See Steffen v. Little,* 2 Wis.2d 350, 357–59, 86 N.W.2d 622, 625–26 (1957).

The town argues that because the effect of *Fitchburg II* was to declare Madison a city of the first class for pur-

---

[5] *Adams v. Wright,* 403 So.2d 391, 394 (Fla. 1981); *Denicola v. Providence Hospital,* 387 N.E.2d 231, 233 (Ohio 1979); *Norton v. Paolino,* 327 A.2d 275, 278 (R.I. 1974); *Haddenham v. State,* 550 P.2d 9, 12 (Wash. 1976); *Main v. State,* 668 P.2d 868, 872 (Alaska App. 1983); *Long Leaf Lumber, Inc. v. Svolos,* 258 So.2d 121, 124 (La. App. 1972).

poses of sec. 60.81, Stats., the enactment of sec. 990.001(15), Stats., "changed" that status and thus the statute must be considered "substantive," rather than procedural. We disagree.

First, sec. 990.001(15), Stats., makes no reference to sec. 60.81, Stats; it speaks only to the procedures a city must follow to move to the next higher classification under sec. 62.05, Stats. Section 60.81 is unchanged by sec. 990.001(15); the criteria for incorporation—including adjacency to a first class city—remain exactly the same.

The town's position, however, is that retroactive application of sec. 990.001(15), Stats., would impair the "right to incorporate" which it gained when the petition was filed with the town clerk some forty days before the effective date of the statute. The argument ignores the fact that the classification of cities, like incorporation, annexation and the entire array of municipal privileges, is wholly within the control of the legislature. "The creation of municipal corporations is peculiarly within the province of the legislature. A unit of local government is a creature of the legislature. It owes its existence to legislative fiat and its life may be snuffed out by appropriate legislative action." *Scharping v. Johnson,* 32 Wis.2d 383, 388, 145 N.W.2d 691, 694 (1966). In *Madison Metropolitan Sewerage Dist. v. Committee,* 260 Wis. 229, 243, 50 N.W.2d 424, 432 (1951), the court stated, quoting earlier cases:

> The state, . . . at its pleasure, may . . . expand or contract the territorial area, unite the whole or a part of it with another municipality, repeal the charter and destroy the corporation. All this may be done, conditionally or unconditionally, with or without the consent of the citizens, or even against their protest. In all these respects the state is supreme, and its legislative

103

body . . . may do as it will. . . . [Citations omitted.][6]

Section 990.001(15), Stats., is a procedural statute. It relates solely to sec. 62.05, Stats., which specifies the procedures by which a city, having reached the required population, may move up the classification ladder; it does not create, abolish or otherwise regulate the ability of a city to so move.

The fact that the change wrought by creation of sec. 990.001(15), Stats., may affect other interests does not make it substantive. In *Mosing v. Hagen,* 33 Wis.2d 636, 148 N.W.2d 93 (1967), the court ruled that a statute requiring dismissal of actions in which the summons is not filed within one year of service was procedural in nature and could be applied retroactively—even though, because of the running of the statute of limitations, the effect was to bar the action. *Id.* at 641–42, 148 N.W.2d at 96–97. *See also Boggs v. Morden,* 117 Wis.2d at 775, 345 N.W.2d at 491–92 (amendment adding podiatrists to the definition of "health care providers" in the patients compensation law, sec. 655.001(8), Stats., held procedural and thus applicable to a medical malpractice claim arising prior to its enactment); *Steffen,* 2 Wis.2d at 358, 86 N.W.2d at 625–26 (statute providing for jurisdiction over out-of-state vehicle owners by service on the Wisconsin Commissioner of Motor Vehicles held procedural and applicable to auto accident occurring prior to its adoption). Section 990.001(15) is no more substantive than the statutes at issue in *Mosing, Boggs* and *Steffen.*

The remaining question is whether application of sec. 990.001(15), Stats., to these incorporation proceedings will interfere with the town's vested rights. As we have

---

[6] The state, of course, may not violate its own constitution in exercising its powers over municipalities. *Scharping,* 32 Wis.2d at 388–89, 145 N.W.2d at 694. There is no claim of unconstitutional action in this case, however.

said, there is no such thing as a "right" to incorporate. Municipal incorporation is a matter of legislative grace, not a matter of right. Indeed, even where, as here, the town seeking to incorporate has begun climbing the procedural ladder by filing the petition and scheduling the referendum, it acquires no rights. The question was settled many years ago in *Blooming Grove v. Madison,* 253 Wis. 215, 221, 33 N.W.2d 312, 315 (1948), where the court held that filing a petition and introducing and publishing a resolution for annexation were simply "procedural steps" under which "[n]o rights were acquired by anyone." We see no distinction between annexation and incorporation proceedings in terms of legislative control over the general subject matter and the procedural steps by which the designated result may be accomplished.

The town had no vested rights which could be disturbed by application of sec. 990.001(15), Stats. It is a procedural law, and, because there is nothing in its language indicating a clear legislative intent to the contrary, the trial court was correct in holding that it is applicable to the incorporation proceedings instituted by the town on January 16, 1984.[7]

*By the Court.*—Judgment and order affirmed.

---

[7] Because we so conclude, we need not reach other issues raised by the parties on appeal.