Shirley W. MULLEN, Plaintiff-Respondent,
Douglas MULLEN, Plaintiff,

v.

Scott A. COOLONG, American Family
Insurance Company, Tracey E. Strain,
Defendants,

HORACE MANN INSURANCE COMPANY,
Defendant-Appellant.†

Court of Appeals

*No. 85–0308. Submitted on briefs May 7, 1986.—Decided
July 17, 1986.*

(Also reported in 393 N.W.2d 110.)

† Petition to review pending.

440

For the defendant-appellant the cause was submitted on the briefs of *John Possi* and *Bell, Metzner & Gierhart, S.C.* of Madison.

For the plaintiff-respondent the cause was submitted on the briefs of *Bruce D. Huibregtse* and *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

Briefs of amicus curiae were filed by *Scott G. Pernitz* and *Winner, McCallum, Wixson & Pernitz* of Madison on behalf of *Wisconsin Insurance Alliance,* and by

*William C. Gleisner, III,* and *David E. Sunby* and *Weiss, Steuer, Berzowski, Brady & Donahue* of Milwaukee on behalf of *Wisconsin Academy of Trial Lawyers.* Before Gartzke, P.J., Dykman, J. and Eich, J.

DYKMAN, J.  Horace Mann Insurance Company appeals from a judgment and order in favor of Shirley and Douglas Mullen on their claim under a policy of uninsured motorist insurance. The issue is whether the court erred by construing secs. 632.32(4)(a)1., Stats., and 631.43(1), Stats.,[1] to invalidate a reducing clause

---

[1] Section 632.32(4)(a)1., Stats., provides in part:

(4)  Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

(a)1.  For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident. The insurer may increase the coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy.

Section 631.43(1), Stats., provides:

When 2 or more policies promise to indemnify an insured against the same loss, no "other insurance" provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no "other insurance" provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where

in the policy[2] and by permitting the Mullens to stack[3] the uninsured motorist indemnity coverage with a recovery from the liability insurer of a jointly liable motorist. Because we conclude that neither statute nor public policy prohibits such clauses, Horace Mann's contractual obligations were limited by the reducing clause. We therefore reverse the judgment and order.

## FACTS

In April, 1983, Shirley Mullen was struck and injured by a car driven by Scott Coolong. She and her husband sued Coolong and another motorist, Tracey Strain, alleging that the negligence of both caused Mullen's injuries. They joined American Family Mutual Insurance Company, Coolong's insurer. They also joined Horace Mann, their uninsured motorist carrier, because Strain was uninsured.

The Mullens settled their claims against Coolong and American Family, receiving $26,000 in exchange for Pierringer releases.[4] They obtained a default judgment against Strain for $100,012.00.

---

the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured.

[2] A reducing clause in an insurance policy provides for a reduction in the amount of money paid to the insured by whatever amount the insured receives from other sources because of an incident common to the policy and the other source.

[3] "Stacking" refers to an insureds' right to recover under two or more insurance policies. Coverages are then "stacked."

[4] See Pierringer v. Hoger, 21 Wis. 2d 182, 124 N.W.2d 106 (1963).

The Mullens moved for summary judgment against Horace Mann for $25,000, the limit of their uninsured motorist coverage. Horace Mann also filed a motion for summary judgment.[5] Its motion was based on a reducing clause of their policy which provided in part: "Any amount payable under this coverage shall be reduced by any amount paid or payable to or for the *insured:* by or for any *person* or organization who is or may be held legally liable for the *bodily injury* to the *insured.*" (Emphasis in original.)

The court granted the Mullens' motion for summary judgment and Horace Mann appeals. We granted leave to the Wisconsin Academy of Trial Lawyers and the Wisconsin Insurance Alliance to file briefs as *amici curiae.*

## STANDARD OF REVIEW

■
"Summary judgment is appropriate where a determination of an issue of law concludes the case." *Johansen v. Reinemann,* 120 Wis. 2d 100, 101, 352 N.W.2d 677, 678 (Ct.App. 1984). This is such a case. Because the facts are undisputed, we need not undertake the entire summary judgment analysis. The resolution of this case depends upon the effects of insurance statutes applied to those facts. The construction of a statute in re-

---

[5] The Mullens contend they were not properly served with Horace Mann's summary judgment motion, and it does not appear of record. The court acknowledged the company's motion and set forth the allegations in its memorandum decision, but did not rule on it. However, because the grant of the Mullens' motion constitutes relief inconsistent with a grant of Horace Mann's motion, we conclude that the latter—even if properly made—was denied.

gard to a particular set of facts is a question of law. *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). "Therefore, we need not give special deference to the determination of the circuit court." *Id.*

## ENFORCEABILITY OF REDUCING CLAUSE

In 1971, uninsured motorist coverage was made mandatory in every policy of motor vehicle liability insurance issued with respect to vehicles registered or principally garaged in Wisconsin. Section 204.30(5)(a), ch. 28, Laws of 1971.[6] Neither that statute nor its companion insurance provisions barred or limited "other insurance" or reducing clauses.

The supreme court held, in a case with facts virtually identical to those at hand, that a reducing clause in an uninsured motorist contract did not violate pub-

---

[6] Section 204.30(5)(a), Stats. (1971), provided:

No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto in limits for bodily injury or death in the amount of at least $15,000 per person and $30,000 per accident under provisions approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance may be made available to the insured up to the bodily injury coverage limits provided in the remaining portions of the policy.

lic policy. *Leatherman v. American Family Mutual Ins. Co.*, 52 Wis. 2d 644, 650–51, 190 N.W.2d 904, 907 (1971). The court approved the provision, noting that if reducing clauses were to be prohibited, it was up to the legislature to do so. *Id.* at 651, 190 N.W.2d at 907.

The Mullens correctly note that *Leatherman* involved an accident and claim which predated the enactment of sec. 204.30(5)(a), Stats. (1971). They argue that the case was purely a contract case *not* decided in the context of mandatory uninsured motorist coverage and is therefore inapposite. We disagree. The supreme court held in *Scherr v. Drobac,* 53 Wis. 2d 308, 310–11, 193 N.W.2d 14, 15 (1972), that it did "not think that the provisions of 204.30(5)(a), Stats. [1967], change the [*Leatherman*] outcome.[7] All this new statute does, is require that the coverage be offered. . . . [T]he statute is silent as to the validity of the 'reducing clause' found in the uninsured motorist protection provisions of the . . . contract in *Leatherman."*

In 1973, the legislature amended sec. 204.30(5)(a), Stats., by adding the following:

> The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance as required in this subsection shall not be reduced by the terms thereof to provide the insured with less protection than would be afforded him if he were injured by a motorist insured under an automobile liability or motor vehicle liability policy of insurance containing the limits provided in this subsection.

---

[7] The 1967 legislation required liability carriers to offer uninsured motorist coverage while the 1971 legislation required uninsured motorist coverage in all liability policies.

446

Ch. 72, Laws of 1973. There are no cases construing this amendment, but the legislative council specifically noted that it was a response to the *Leatherman* decision. It said:

> In Leatherman the court upheld the validity of policy provisions relating to uninsured motorist coverage. The court agreed with the insurer's position that these provisions required the insurer to pay the amount the insured was legally entitled to recover as damages from the owner or operator of an uninsured automobile, but reduced this amount by payments recovered from anyone jointly or severally liable for the accident even if the payments did not cover any portion of the uninsured motorist's share of the liability. . . .
>
> This bill would make certain that the reduction in coverage permitted in Leatherman would not occur under the amended statute.

Legislative council note—1973, to sec. 204.30, Stats. (1973). There is no question that, under sec. 204.30(5)(a), Stats. (1973), a reducing clause such as that in *Leatherman* or the case at bar would be unenforceable.

However in 1975, sec. 204.30(5)(a), Stats., was recodified as sec. 632.32(3)(a), Stats.[8] Section 632.32(3)(a), ch. 375, Laws of 1975. In doing so, the legislature deleted the language of the 1973 amendment entirely. The legislative council noted that: "In sub. (3)(a) the final sentence of s. 204.30(5)(a) is omitted [because i]t does not seem to add anything." Committee comment—1975 to sec. 632.32, Wis. Stat. Ann.

---

[8] Now renumbered sec. 632.32(4)(a), Stats., with no other significant changes beyond increased minimum coverage limits.

We are perplexed by the Council's willingness in 1975 to dismiss a provision as adding nothing whose effects took three paragraphs to explain in 1973. Drafting files and committee reports associated with this recodification give no additional explanation for the change.

■

However, inquiry as to this point is irrelevant if the current statute is unambiguous and clear on its face. *Town of Two Rivers v. DNR,* 105 Wis. 2d 721, 733, 315 N.W.2d 377, 383 (Ct.App. 1981), *overruled on other grounds, Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 375 N.W.2d 648 (1985). Where statutory language is clear and unambiguous, we must give it its ordinary and accepted meaning, *Stoll v. Adriansen,* 122 Wis. 2d 503, 510, 362 N.W.2d 182, 186 (Ct.App. 1984), without reference to extrinsic aids to construction. *Tahtinen,* 122 Wis. 2d at 166, 361 N.W.2d at 677. The alternative plain meaning rule adopted in *City of Madison v. Town of Fitchburg,* 112 Wis. 2d 224, 236, 332 N.W.2d 782, 787 (1983), leads to the same result. That rule, that the spirit or intent of a statute should govern over the literal or technical meaning of the statute, leads us again to *Scherr,* where the supreme court concluded that statutory language similar in pertinent part to the present language of sec. 632.32(4)(a)1., Stats., required only that automobile liability insurance policies offer uninsured motorist coverage. *Scherr,* 53 Wis. 2d at 311, 193 N.W.2d at 15. Had the supreme court felt that the spirit or intent of sec. 204.30(5)(a), Stats. (1967), required the stacking of uninsured motorist coverage, the result in *Scherr* would have been different.

448

Section 632.32(4)(a), Stats., is clear and unambiguous. "Ambiguity arises when more than one reasonable, although not necessarily correct, meaning can be attributed to a word, phrase, or statute." *West Allis School Dist. v. DILHR,* 116 Wis. 2d 410, 418–19, 342 N.W.2d 415, 420 (1984).

The dissent does not dispute that the legislation in question is plain on its face. Nonetheless, it concludes that a legislative council comment gives the statute a meaning not found in its language. This is despite specific language *not* adopting those comments. Wisconsin Legislature, Joint Rule 7(2)(g) (1973). Under the dissent's view, the non-adopted comment becomes "public policy," a concept which then prevails over the action of the legislature.

■ Using legislative council comments to override legislation is improper because those notes are but another form of legislative history "to be resorted to in cases of ambiguity." *State v. Beets,* 124 Wis. 2d 372, 382 n.6, 369 N.W.2d 382, 386 (1985). There is no ambiguity in a repealed statute. Moreover, in situations where the supreme court concluded that statutes were repealed by mistake or error, it has nonetheless held that the repealing act must be given effect according to its terms. *Milwaukee County v. Schmidt,* 38 Wis. 2d 131, 136–37, 156 N.W.2d 493, 496 (1968); *Steffen v. Little,* 2 Wis. 2d 350, 355, 86 N.W.2d 622, 624 (1957); *Dovi v. Dovi,* 245 Wis. 50, 53, 13 N.W.2d 585, 587 (1944); *Kugler v. Milwaukee,* 208 Wis. 251, 254–5, 242 N.W. 481, 482–3 (1932). In *Schmidt,* the court said: "The use of the language 'repeal and recreate' in the legislative process means exactly what it says and constitutes an express repeal." *Id.* at 136, 156 N.W.2d at 496. Section 42, ch.

375, Laws of 1975 provides: "204.14 to 204.34 of the statutes, as affected by the laws of 1975, are repealed." Section 42, ch. 375, Laws of 1975 provides: "Subchapters I to VIII of chapter 632 of the statutes are created to read: . . . ." Those sections mean exactly what they say.

The other difficulty with the dissent's analysis is that "public policy" is a term with so broad a meaning that it can be interpreted to mean whatever any person or group deems correct. *See Brockmeyer v. Dun & Bradstreet,* 113 Wis. 2d 561, 573, 335 N.W.2d 834, 840 (1983) ("Public policy is a broad concept embodying the community common sense and common conscience"). Recognizing the vagueness of the concept of public policy, the *Brockmeyer* court noted that public policy is found in our constitution and legislation. *Id.* There is no suggestion in *Brockmeyer* that Legislative Council Comments are another source of public policy.[9]

Given the controversy over the appropriate method of compensating tort victims, and the widely divergent characterizations of reducing clauses in insurance policies, *any* conclusion that "public policy" takes precedence over the plain meaning of the statute is in reality a conclusion that one view of reducing clauses is the better one. That conclusion is better and more commonly drawn by the legislature. Legislative

---

[9] Even if one accepts the "public policy" theory advanced by the dissent, its conclusion is incorrect because it wrongly assumes that the 1973 legislative council comments were the latest promulgation of its public policy. The 1975 legislative council prefatory committee comment to ch. 632 read: "This chapter contains provisions applying to specific types of insurance contracts. Only those provisions have been included that seem to reflect a public policy of sufficient importance to warrant statutory enactment." Ch. 632, Wis. Stat. Ann.

reaction to *Leatherman* shows how easily this can be done.

The Mullens argue that the deletion of the anti-reducing clause provision had no effect on the meaning of the statute. In reality, they are asking us to resurrect statutory language expressly repealed by the legislature. We cannot do this. *State ex rel. Schwochert v. Marquette County Bd.*, 132 Wis. 2d 196, 203, 389 N.W.2d 841, 844 (Ct. App. 1986).

Though a number of recent cases have drawn language from the provision deleted during the recodification of sec. 204.30(5)(a), Stats. (1973), ("[T]he policy behind the uninsured motorist statute is to afford an insured, injured by an uninsured motorist, the same protection he would have had for an injury caused by [an insured] motorist . . . ." *Radlein v. Industrial Fire & Cas. Ins. Co.*, 117 Wis. 2d 605, 624, 345 N.W.2d 874, 884 (1984); *Vidmar v. American Family Mut. Ins. Co.*, 104 Wis. 2d 360, 370, 312 N.W.2d 129, 133 (1981), *overruled on other grounds, Welch v. State Farm Mut. Auto Ins. Co.*, 122 Wis. 2d 172, 361 N.W.2d 680 (1985), none have used this language to invalidate a reducing clause in the circumstances now before us.[10] We do not con-

---

[10] The Mullens also argue that *Collicott v. Economy Fire & Casualty Co.*, 68 Wis. 2d 115, 227 N.W.2d 668 (1975), holds that an injured party may proceed against his or her insurer for the negligence of an uninsured motorist even though an insured joint tortfeasor was also involved in the accident. The Mullens misread that case. *Collicott* holds only that the injured party need not establish the absence of other collectible funds in order to qualify for uninsured motorist coverage. *Id.* at 122–23, 227 N.W.2d at 672. How-

sider the supreme court's use of this language as amending the statute in the absence of language stating that intent.

If the *Leatherman* outcome could occur under the unamended sec. 204.30(5), Stats. (1967), as the supreme court held in *Scherr,* it could also occur under the parallel provisions of sec. 632.32(4)(a)1., Stats., from which the 1973 anti-*Leatherman* language had been deleted. Both statutes, as the *Scherr* court noted regarding sec. 204.30(5)(a), are "silent as to the validity of . . . 'reducing clause[s]' found in . . . uninsured motorist protection provisions. . . ." *Scherr,* 53 Wis. 2d at 311, 193 N.W.2d at 15. We conclude that sec. 632.32(4)(a)1. does not bar Horace Mann's reducing clause.

### SECTION 631.43, STATS.

Section 631.43, Stats., often referred to as "the stacking statute," was enacted in 1975. Section 41, ch. 375, Laws of 1975. The Academy of Trial Lawyers contends that, when read together with sec. 632.32(4)(a)1., Stats., the "stacking statute" is ambiguous as to whether its "two or more policies" encompasses both indemnity and liability policies. Horace Mann and the Insurance Alliance counter that sec. 631.43(1) permits only the stacking of indemnity benefits, not the stacking of indemnity and liability policies.

Section 631.43(1), Stats., deals expressly with multiple policies which "promise to *indemnify* an insured

---

ever, the plaintiff in *Collicott* neither sued for, nor collected benefits or settlement from the insured parties' insurer. The case does not implicate stacking.

against the same loss. . . ." (Emphasis added.) The words of the statute are unambiguous and we give them their obvious and ordinary meaning. *State v. Lossman,* 118 Wis. 2d 526, 535, 348 N.W.2d 159, 164 (1984). We conclude that sec. 631.43(1) prohibits restrictions only on the stacking of *indemnity* coverages. This interpretation is consistent with the four prior cases in which that statute has been construed: *Tahtinen,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985); *Welch,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985); *Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 360 N.W.2d 61 (Ct.App. 1984); *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 300 N.W.2d 875 (Ct.App. 1980). In each case, sec. 631.43(1) was held to invalidate reducing clauses in the context of multiple uninsured motorist (indemnity) coverages. None of those cases arose under facts like those at hand.[11]

The Mullens suggest it makes no sense "to ban reducing clauses where uninsured motorist coverage is to be stacked with other uninsured coverages, but not to ban reducing clauses where that coverage is to be added to liability coverage available to the injured insured." While we may not construe statutes to create an absurd or unreasonable result, *Green Bay Redevelopment Authority v. Bee Frank,* 120 Wis. 2d 402, 409, 355 N.W.2d 240, 244 (1984), we cannot say this result is either. We do not sit as a "superlegislature debating and deciding upon the relative merits of legislation." *Coffee-Rich, Inc. v. Department of Agriculture,* 70 Wis. 2d 265, 269, 234 N.W.2d 270, 272 (1975). If there is any reasonable basis for the law in question, we assume the

---

[11] The present case deals with whether a reducing clause may validly prevent the stacking of indemnity coverage with liability coverage.

legislature had such a purpose in mind when the law was enacted. *Id.* In this context, we believe the legislature could have reasonably viewed the authorization of reducing clauses in certain circumstances as one means of keeping uninsured motorist insurance premiums low, while permitting an injured person some recovery.

## CONSTITUTIONAL CLAIM

The Academy of Trial Lawyers suggests that enforcement of the reducing clause would deny the Mullens "their equal protection rights to be made whole when injured by the negligence of joint tortfeasors." This constitutional issue is raised for the first time on appeal, and we decline to consider it. *Wirth v. Ehly,* 93 Wis. 2d 433, 443, 287 N.W.2d 140, 145 (1980).

## CONCLUSION

A contractual provision voluntarily made between competent parties is valid and enforceable unless it violates a statute, rule of law, or public policy. *Jacobs v. Wisconsin Nat. L. Ins. Co.,* 162 Wis. 318, 321, 156 N.W. 159, 160 (1916). We have found no current statutory provision, rule or expression of public policy which requires the invalidation of the reducing clause of the Horace Mann uninsured motorist insurance contract. We therefore reverse.

*By the Court.*—Judgment and order reversed.

GARTZKE, P.J. *(dissenting).* Statutes seldom expressly state public policies. The 1973 amendment to the predecessor of sec. 632.32(4)(a), Stats., is an exam-

ple. The amendment did not expressly adopt a public policy against reducing clauses applicable to uninsured motorist provisions. But that was the legislative policy. We know that from the legislative council's note to the 1973 amendment concerning the sentence added to the statute. That note repudiated the public policy judicially announced in *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971).

The 1975 amendment removed the sentence added in 1973, again with no express statement of public policy. But the 1975 amendment embodied no intent to revert to the public policy announced in *Leatherman.* We know that from the legislative council's note to the 1975 amendment. The note states that the sentence is omitted because it "does not seem to add anything."

When the legislature's view of public policy conflicts with that of the courts, the legislative view must prevail, unless it involves inherent judicial powers. I would affirm.