LEATHERMAN, Appellant, v. AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Respondent.

No. 202. Argued October 6, 1971.—Decided November 5, 1971.
(Also reported in 190 N. W. 2d 904.)

For the appellant there was a brief by *Stewart, Peyton & Crawford,* attorneys, and *Harold R. Sheets* of counsel, all of Racine, and oral argument by *Mr. Sheets.*

For the respondent there was a brief by *Heft, Coates, Heft, Henzl & Bichler* and *Robert H. Bichler*, all of Racine, and oral argument by *Robert H. Bichler.*

ROBERT W. HANSEN, J.  The sole issue on this appeal is whether the uninsured motorist coverage provision guaranteed payment, as the trial court found, only to the extent all other sources did not yield the recovery, up to $10,000, to which plaintiff was legally entitled, or whether it went further, as plaintiff contends, to guarantee recovery equivalent to that which would have been received if the uninsured motorist had been insured.  As the trial court stated, the case is controlled wholly by the provisions of the insurance contract between plaintiff and defendant.

*Provisions of policy.*

The policy of defendant insurer states:

"Limits of Liability: $10,000 each person; . . ."

The policy then states that the agreement is subject to the limits of liability and conditions in the policy:

"In consideration of the payment of the premium for this endorsement, the Company agrees with the Named Insured, subject to the limits of liability, exclusions, conditions, and other terms of this endorsement. . . ."

The policy promises to pay for injuries caused by an uninsured motorist if the insured is legally entitled to payment:

"To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; . . ."

The policy contains a "reducing clause," condition 4 (b) (1), providing that the amount payable is to be reduced if someone else pays:

"**Limits of Liability . . .**
"(b) Any amount payable under the terms of this endorsement because of bodily injury sustained in an accident by a person who is an insured under this Endorsement shall be reduced by
"(1) all sums paid on account of such bodily injury by or on behalf of . . . any other person or organization jointly or severally liable together with such owner or operator for such bodily injury including all sums paid under Bodily Injury Liability Coverage, . . ."

Condition 7 of the policy, entitled "Trust Agreement," provides:

"In the event of payment to any person under this endorsement:
"(a) the company shall be entitled to the extent of such payment to the proceeds of any settlement or judgment that may result from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury because of which such payment is made;
"(b) such person shall hold in trust for the benefit of the company all rights of recovery which he shall have against such other person or organization because of the damages which are the subject of claim made under this endorsement; . . ."

As the trial court pointed out, under condition 7, if the defendant insurer had made full payment of the $10,000 policy limit to the plaintiff, it would have been entitled to the exact extent of such payment to the proceeds of the judgment that resulted from the exercise of plaintiff's rights of recovery against drivers Boileau and Garza. We agree it is clear that, under the trust agreement provision, if payment had earlier been made, plaintiff would have held $10,000 of the judgment in trust for defendant, and such $10,000 would have been payable to the defendant under the policy.

*Claim of ambiguity.*

Plaintiff's primary proposition is that an ambiguity exists as to the application of condition 4 of the policy endorsement providing that "any amount payable" is to be reduced by payments made by others. Plaintiff contends that the phrase "any amount payable" does not refer to the $10,000 limit of the policy endorsement or the $12,801.26 judgment, but to the $2,801.26 of the judgment remaining unpaid for which the uninsured motorist was liable. The claim of ambiguity fails. Under the policy "any amount payable" is "any amount payable *under the terms of this endorsement* because of bodily injury sustained in an accident. . . ." (Emphasis supplied.) The "reducing clause" in condition 4(b) (1) provides for credit on the $10,000 policy limit liability for "all sums paid on account of such bodily injury by or on behalf of . . . any other person or organization jointly or severally liable together with such [uninsured] owner or operator for such bodily injury. . . ." When plaintiff won judgment for $12,801.26 against Boileau and Garza, he was legally entitled to recover the amount of the judgment from either the insured driver, Boileau, or the uninsured driver, Garza. Condition 4(b) (1) clearly applies. Since the judgment exceeded the amount of the policy limit, "any amount payable" was $10,000 as far as defendant insurer is concerned. To hold otherwise would be to ignore or strike from the contract the "reducing clause." This would not resolve an ambiguity in the contract; it would rewrite it to leave out an applicable condition.

In construing an insurance policy and ascertaining the intent of the parties, it is the entire policy that should be considered. (*Tischendorf v. Lynn Mut. Fire Ins. Co.* (1926), 190 Wis. 33, 41, 208 N. W. 917.) This state follows a policy of strict construction of insurance policies, resolving ambiguities against the insurer. (*See: Kopp v.*

*Home Mut. Ins. Co.* (1959), 6 Wis. 2d 53, 94 N. W. 2d 224.) However, unless there is an ambiguity, the rule of strict construction against insurers is not applicable. (*Westerman v. Richardson* (1969), 43 Wis. 2d 587, 595, 168 N. W. 2d 851.) Here the result reached by the trial court is compelled by the clear and unambiguous language of the insurance contract itself.

*The public policy.*

What we have here is, in part, an attack upon the propriety of permitting "reducing clauses" in uninsured motorist coverage endorsements to liability policies. The result they require, it is argued, is inconsistent with the public purpose of providing protection for a person injured by an uninsured motorist equivalent to that assured if he were injured by an insured motorist. On oral argument, plaintiff's counsel quoted one writer, accepting equivalence as the goal, as concluding: ". . . the enforceability of this clause is open to question. . . ." (Alan I. Widiss, *A Guide to Uninsured Motorist Coverage* (1969), sec. 2.63, page 119.) The author, in a situation analogous to the instant case, writes: ". . . If both drivers were insured, the claimant would be fully indemnified, since neither insurer would be entitled to reduce its liability, although they might be entitled to apportion their liability. However, if these limitations are enforced, the insurance company's maximum total liability is $10,000. This does not place the insured in the same position he would have been in had the uninsured motorist been insured. If the uninsured motorist endorsement is any meaningful way to produce such equivalence, the company should not be allowed to reduce its liability in this situation unless the insured-claimant has been fully indemnified. . . ."

There is merit to the argument advanced, but it appears to us to be an argument for banning, rather than construing, "reducing clauses" in uninsured motorist coverage endorsements. As such, it is to be addressed to

the legislative branch of government, not the judicial. At the time of the accident, no Wisconsin statute required uninsured motorist coverage. (Sec. 204.30 (5), Stats., now provides that all automobile insurance policies must include $15,000 uninsured motorist coverage per person unless the purchaser of the policy rejects the coverage in writing.) It is not the judicial prerogative to strike from an insurance policy endorsement a particular provision because it does not promote the objective of equivalency and requires a ruling adverse to the insured. We are required to deal here not with preferences between types of insurance policies, but with what the unambiguous language of a particular policy provides. With the "reducing clause" an integral part of it, that policy provided only "backstop" or last resort protection, assuring plaintiff the policy limit of $10,000, lessened by what was recovered from "any other person or organization jointly or severally liable."

*By the Court.*—Order and judgment affirmed.