Kim R. NICHOLSON, Plaintiff-Appellant,

v.

The HOME INSURANCE COMPANIES, INC., a
foreign corporation, Defendant-Respondent,

Sandra GARCIA, Alexander Chartier, and
American Family Mutual Insurance Co., a
Wisconsin Mutual Insurer, Defendant.

Supreme Court

*No. 84–1865. Argued January 6, 1987.—Decided May 12, 1987.*

(Also reported in 405 N.W.2d 327.)

For the plaintiff-appellant there was a brief by *John W. Strasburg* and *John W. Strasburg, S.C.*, Milwaukee and oral argument by *John W. Strasburg.*

For the defendant-respondent there was a brief by *Ronald L. Piette* and *Piette, Knoll & Nelson, S.C.*, Milwaukee, and oral argument by *Ronald L. Piette.*

Amicus curiae brief was filed by *D. J. Weis* and *Johnson, Weis, Paulson & Priebe, S.C.*, Rhinelander, for the Wisconsin Academy of Trial Lawyers.

SHIRLEY S. ABRAHAMSON, J. This is an appeal from a judgment of the circuit court for Racine County, A. Don Zwickey, Reserve Judge. This court took jurisdiction of the appeal upon certification by the court of appeals. Sec. (Rule) 809.61, Stats. 1985–86.

The court of appeals certified the following question which is one of first impression for this court: "When an insurance policy contains a provision which accords uninsured motorist (UM) coverage to a passenger in an insured's vehicle and also contains a reducing clause which states that any payment under the UM coverage will reduce any recovery for the same damages under the liability coverage, is the passenger permitted to stack the UM and liability coverages or does the reducing clause effectively preclude such action?"

The circuit court enforced the reducing clause whose validity is at issue in this case. The circuit court permitted the insurance company to reduce the amount it owed to the plaintiff under the liability portion of its policy ($50,000) by the amount which it paid the plaintiff prior to trial under the uninsured motorist portion of its policy ($15,000). Accordingly, the circuit court entered judgment in favor of the plaintiff in the amount of $35,000. We conclude that

the reducing clause is void and unenforceable because it contravenes sec. 632.32(4)(a), Stats. 1979,[1] and we reverse this portion of the circuit court's judgment and remand the cause to the circuit court to enter judgment in favor of the plaintiff in the amount of $50,000.

The circuit court denied plaintiff's claims for prejudgment interest and double costs. This issue is before this court on appeal, and we affirm this portion of the judgment.

## I.

For purposes of this appeal, the facts are not in dispute. This appeal arises out of an automobile

[1]Sec. 632.32, Stats. 1979, provides, in part, as follows:

"**632.32 Provisions of motor vehicle insurance policies.** (1) SCOPE. Except as otherwise provided, this section applies to every policy of insurance issued or delivered in this state against the insured's liability for loss or damage resulting from accident caused by any motor vehicle, whether the loss or damage is to property or to a person.

. . .

"(4) REQUIRED UNINSURED MOTORIST AND MEDICAL PAYMENTS COVERAGES. Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall contain therein or supplemental thereto provisions approved by the commissioner:

"(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $15,000 per person and $30,000 per accident. The insurer may increase coverage limits provided under this paragraph up to the bodily injury liability limits provided in the policy."

accident on June 21, 1980, in which Kim Nicholson, the plaintiff, was seriously injured. The plaintiff was a passenger in the car driven by Sandra Garcia; the car ran a stop sign and was struck broadside by a car driven by Alexander Chartier, an uninsured motorist.

The car Ms. Garcia was driving was owned by her father and was insured by Home Insurance Companies, Inc. The policy provided liability coverage in the amount of $50,000 per person/$100,000 per accident, and, as required by sec. 632.32(4)(a), Stats. 1979, provided uninsured motorist coverage in the amount of $15,000 per person and $30,000 per accident.

After the injury Home Insurance offered to pay the plaintiff $50,000, its liability coverage limits, but only in exchange for a release by the plaintiff from all further claims she might have against Home Insurance and Ms. Garcia. The plaintiff was willing to accept $50,000 in settlement of her liability claim against Home Insurance but not in settlement of her liability claim against Ms. Garcia. Home Insurance continued to demand a full release both of itself and its insured in return for payment of $50,000. The plaintiff then commenced this action on May 18, 1983, against Ms. Garcia, Mr. Chartier and Home Insurance.[2]

After the plaintiff commenced this action, Home Insurance furnished plaintiff's counsel with a complete copy of the Home Insurance policy. At that time, the plaintiff discovered the policy's uninsured motorist provision which the plaintiff believed to be applicable to her claim against Mr. Chartier, an uninsured motorist. Home Insurance settled the plaintiff's claim

---

[2]The lawsuit against American Family Mutual Insurance is not involved in this appeal.

to its uninsured motorist coverage by paying the plaintiff $15,000 and reserving the issue of reduction as a "policy defense" for court resolution.

The reducing provision appears in the uninsured motorist section of the Garcia policy (Part C) under the heading "Limit of Liability." The policy provides, inter alia, as follows:

> "Any amounts otherwise payable for damages under this coverage [uninsured motorist] shall be reduced by all sums: 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A [liability coverage];
>
> . . . .
>
> "Any payment under this coverage [uninsured motorist] will reduce any amount that person is entitled to recover for the same damages under Part A [liability coverage]."

The jury absolved Mr. Chartier of any negligence, found Ms. Garcia 100% negligent, and determined damages at $591,465.00. The circuit court stayed all proceedings against Ms. Garcia until such time as her pending bankruptcy claim was resolved. The circuit court entered judgment against Home Insurance for $35,000, which sum represents the full limit of the liability coverage, $50,000, minus the $15,000 Home Insurance had paid the plaintiff prior to trial under the uninsured motorist coverage. The circuit court stated that the $35,000 constituted a full and complete discharge and satisfaction of all of the duties and obligations of Home Insurance to the plaintiff under the Home Insurance policy.

Both parties agree that the jury's finding that Mr. Chartier was not negligent has no bearing on this appeal. The parties agree that had Home Insurance

not paid the $15,000 prior to trial, the jury finding that Mr. Chartier was not negligent would have negated any claim the plaintiff might have had against Home Insurance under the uninsured motorist coverage of the policy. The parties also agree that because Home Insurance settled the claim under the uninsured motorist coverage before the question of Mr. Chartier's negligence was resolved, Home Insurance cannot seek to recoup that payment on the ground that Mr. Chartier was ultimately found not to be negligent.

## II.

The first question presented in this case is whether the court will enforce the reducing clause of the Home Insurance policy which allows Home Insurance to reduce the $50,000 the plaintiff is entitled to recover under the liability provisions of the policy by the $15,000 the plaintiff has received under the uninsured motorist provision of the same policy.

The plaintiff first asserts that the reducing clause does not apply in this case. The reducing clause states that any payment under the uninsured motorist coverage will "reduce any amount that person is entitled to recover for the *same damages*" under the liability coverage. (Emphasis added.) The plaintiff argues that the same damages language of the reducing clause prohibits her recovering twice for the same bodily injury and is not applicable to this case where, because of the policy limits, the plaintiff will not be compensated fully for her bodily injury. In other words, the plaintiff urges that because her damages exceed the maximum combined coverage (recovery) under the uninsured motorist and the liability provi-

sions, there is no risk that payment under both will allow the plaintiff to recover twice for the same damages. The plaintiff asserts that if her total damages were only $50,000 then the damages compensated under the uninsured motorist coverage would be the "same" as those compensated under the liability coverage and the reducing clause would come into effect.

We conclude that the plaintiff's reading of the reducing provision is strained and unpersuasive. The Home Insurance policy has two related provisions, which we quoted earlier, concerning reduction of payments: any payment made under the liability provision reduces any payment under the uninsured motorist provision; any payment made under the uninsured motorist provision reduces payment "for the same damages" under the liability coverage. Only the second provision uses the term "same damages." If we adopted the plaintiff's reading of the policy, the two reducing provisions would produce different results depending on whether Home Insurance first made payment under the uninsured motorist or under the liability provision. We conclude that a more reasonable reading of the reducing provisions of the policy is that each provision complements the other, assuring that any amount paid for bodily injury under one part of the policy would reduce the amount payable for bodily injury under the other part of the policy.

The plaintiff's second argument is that where, as in this case, the damages are in excess of the combined total of the separate liability and uninsured motorist coverages in a single policy, a reducing clause such as

the one in the instant case violates the legislative mandate expressed in sec. 632.32(4)(a), Stats. 1979, and therefore is unenforceable. Upon examination of sec. 632.32(4)(a), we find the plaintiff's argument persuasive.

The text of the uninsured motorist statute, sec. 632.32(4)(a), requires the policy in this case to include uninsured motorist coverage. Sec. 632.32(4)(a) provides:

> "Every policy of insurance issued subject to the section that insures with respect to a motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death ... shall contain ... provisions ...;
>
> (a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits or at least $15,000 per person and $30,000 per accident ...."

Sec. 632.32(4)(a) is silent about reducing clauses; it neither authorizes nor prohibits them. The uninsured motorist statute mandates that certain motor vehicle insurance policies provide uninsured motorist protection. This court has said that "[t]he purpose of uninsured motorists coverage is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." *Vidmar v. American Fam. Mut. Ins. Co.,* 104 Wis. 2d 360, 370, 312 N.W.2d 129 (1981), overruled on other grounds *Welch v. State Farm Mut. Auto Ins. Co.,* 122 Wis. 2d 172, 179, 361 N.W.2d 680 (1985). See also *Radlein v. Industrial Fire*

*& Cas. Ins. Co.,* 117 Wis. 2d 605, 624–25, 345 N.W.2d 874 (1984). Uninsured motorist coverage essentially substitutes for insurance that the tortfeasor should have had.

If Mr. Chartier, the uninsured motorist, had carried liability insurance coverage in the same amount as the uninsured motorist coverage, the plaintiff would have recovered $65,000—$15,000 from Mr. Chartier's insurance company under its liability coverage and $50,000 from Home Insurance under its liability coverage.[3] Because Mr. Chartier was uninsured, however, the plaintiff will recover a total of only $50,000 if the reducing clause is enforced. Instead of placing the injured party in the same position that she would have been in had the uninsured motorist been insured, the uninsured motorist provision in combination with the reducing clause puts Home Insurance in the same position that it would have been in had the uninsured motorist carried insurance. Insurance companies are required to put uninsured motorist provisions in their automobile insurance policies for the protection of an injured party, not for their own protection. If the purpose of the uninsured motorist statute is to be achieved, the plaintiff must be entitled to the proceeds of the uninsured motorist coverage without reductions that would not have been available had the uninsured motorist been insured.

The plaintiff argues that the effect of the two reducing provisions in this case is to reduce the uninsured motorist coverage to zero: the plaintiff recovers the maximum of $50,000 under the liability coverage; she recovers nothing under the uninsured

[3]We assume for this example, as Home Insurance assumed, that Mr. Chartier was negligent.

motorist coverage. The plaintiff asserts that such a result is contrary to the clear text of the statute and the legislature's objective to ensure through the statute that the policy provide $15,000 uninsured motorist coverage. We agree with the plaintiff.

Home Insurance urges that the two reducing provisions do not negate the uninsured motorist coverage. It reasons that the uninsured motorist coverage is in full force and effect in this case with the plaintiff recovering $15,000 under the uninsured motorist provision and recovering $35,000 under the liability provision. In effect, Home Insurance urges that under the Garcia policy $50,000 is Home Insurance's maximum limit for all damages for bodily injury sustained by any one person in any one auto accident, that $35,000 is the amount of liability coverage under the circumstances of this case, and that no statute prohibits the insurance company from issuing liability insurance in the amount of $35,000.

Home Insurance's argument elevates form over substance, ignoring the legislative intent underlying the uninsured motorist statute. Home Insurance's argument amounts to a plea to do indirectly that which it cannot do directly. Although Home Insurance cannot directly eliminate or reduce the statutorily mandated $15,000 uninsured motorist coverage, it does so indirectly in this case by reducing the liability coverage whenever money is paid out for uninsured motorist coverage. Unable to withhold uninsured motorist coverage, Home Insurance instead gives such coverage with one hand and takes it away with the other. The reducing clause effectively eliminates uninsured motorist coverage whenever the insurance company's liability coverage applies, as happened in this case. Home Insurance's denial of coverage under

uninsured motorist coverage—even in this indirect way—violates sec. 632.32(4)(a) which clearly and unambiguously mandates uninsured motorist coverage.

We hold that the reducing provision violates sec. 632.32(4)(a). This holding is mandated by the text of sec. 632.32(4)(a), which requires the policy to include uninsured motorist coverage, and the public policy underlying sec. 632.32(4)(a), which puts the injured party in the same position as if the uninsured tortfeasor had been insured.

Home Insurance would challenge this holding as contravening *Leatherman v. American Family Mut. Ins. Co.,* 52 Wis. 2d 644, 190 N.W.2d 904 (1971), *Scherr v. Drobac,* 53 Wis. 2d 308, 193 N.W.2d 14 (1972), and *Nelson v. Employers Mut. Casualty Co.,* 63 Wis. 2d 558, 217 N.W.2d 670 (1974). Home Insurance argues that these cases held that reducing clauses—different from the one in the instant case but involving uninsured motorist coverage—did not violate public policy or the statute. As we shall explain, these cases do not dispose of the issue presented in this case.

The *Leatherman* court gave effect to a reducing clause that reduced any amount payable to the injured party under the uninsured motorist policy by all sums paid the injured party by an insured tortfeasor who was jointly liable with the uninsured motorist tortfeasor. As we explained in *Nelson v. Employers Mut. Casualty Co., supra,* 63 Wis. 2d at 567, the *Leatherman* court concluded it was permissible for an uninsured motorist policy to guarantee payment to the injured party only to the extent that all other sources had not yielded the recovery to which the plaintiff is entitled under the uninsured motorist coverage. The *Leatherman* court expressly declined to

hold that uninsured motorist coverage guarantees recovery equivalent to that which would have been had if the uninsured motorist had been minimally insured. Subsequently the *Nelson* court said that while *Leatherman* did not squarely present the issue of the validity of the reducing clause, *Leatherman* did impliedly uphold its validity and "stated the argument that [whether] such a clause was invalid was more properly addressed to the legislature." *Id.* at 568. When the *Leatherman* insurance policy was written, however, no Wisconsin statute required the insurance company to write uninsured motorist coverage.

The *Leatherman* fact situation was presented to the court again in the *Scherr* case. By the time the *Scherr* policy was written, the legislature had adopted sec. 204.30(5), Stats. 1967, the precursor of sec. 632.32(4)(a). The 1967 statute required the insurance company to offer uninsured motorist coverage but gave the insured the right to reject the coverage. The injured party in *Scherr* argued that the reducing clause violated the 1967 statute. The *Scherr* court, without analysis of the 1967 statute, simply concluded that "we do not think that the provisions of sec. 204.30(5)(a), change the outcome [of the *Leatherman* case]. All this new statute does, is require that the coverage be offered." *Scherr*, 53 Wis. 2d at 310–311.

The third case upholding a reducing clause was *Nelson v. Employers Mut. Casualty Co., supra* 63 Wis. 2d at 568–69. In that case the injured party was driving a friend's car which was struck by an uninsured motorist. The injured party could recover from two uninsured motorist provisions: that in the friend's car policy and that in her own car policy. One of the uninsured motorist coverages had a reducing clause. The *Nelson* court upheld the reducing clause, adher-

595

ing to the *Leatherman* and *Scherr* decisions. The *Nelson* court added that the 1967 uninsured motorist statute was silent on the subject of reducing clauses, and the court was not willing to invalidate reducing clauses on the basis of public policy considerations not mandated in a legislative enactment. The *Nelson* court expressly stated that it did not construe the 1973 amendment, which this opinion discusses below, "or intimate any interpretation." *Id.* at 569.[4]

In each of the three cases, despite the fact that the injured party had not been fully compensated for injuries, this court upheld reducing clauses which allowed an insurance carrier to refuse payment under its uninsured motorist coverage once the injured party had received the amount available under the uninsured motorist's provision from any other source. In essence, the court interpreted the uninsured motorist statute to require only that the injured party receive the statutory minimum of uninsured motorist coverage from some source, not that the uninsured motorist coverage guaranteed recovery equivalent to that which the injured party would have received if the uninsured motorist had been minimally insured. As we noted previously, the *Leatherman* court expressly declined to adopt the latter view.

We do not find this trilogy of cases applicable to this case. After *Leatherman, Scherr* and *Nelson* were decided, the statute governing uninsured motorist coverage was amended.

---

[4]A fourth case in the *Leatherman, Scherr* and *Nelson* mode is *Drake v. Milwaukee Mut. Ins. Co.,* 70 Wis. 2d 977, 236 N.W.2d 204 (1975). The *Drake* insurance policy also preceded the 1971 and the 1973 amendments, and the *Drake* court, like the *Nelson* court, carefully explained that it was not considering the 1973 amendment.

The facts in *Leatherman* arose before there was any statute at all regulating uninsured motorist coverage. By the time of *Scherr* and *Nelson,* the legislature had passed the 1967 uninsured motorist statute. Sec. 204.30(5)(a), Stats. 1967. That statute, however, differs substantially from the uninsured motorist statute that governs this case.

Since 1967 the uninsured motorist statute has been amended in several significant ways. First, in 1971, the legislature made uninsured motorist coverage mandatory. Ch. 28, Laws of 1971; sec. 204.30(5)(a), Stats. 1971. Then, in 1973, the legislature specifically addressed for the first time the issue of reducing clauses. It amended sec. 204.30(5)(a) and expressly prohibited reducing clauses which would render the insured's coverage less than if the uninsured motorist had been insured to the same limits as those mandated by the statute. The 1973 amendment added the following language to the uninsured motorist statute:

> "... The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance as required in this subsection shall not be reduced by the terms thereof to provide the insured with less protection than would be afforded him if he were injured by a motorist insured under an automobile liability policy of insurance containing the limits provided in this subsection." Ch. 72, Laws of 1973.

The 1973 amendment clearly declares that the legislative purpose of the uninsured motorist coverage was to place the insured in the same position as if the uninsured motorist had been insured. Legislative Council Note, 1973, sec. 204.30, Stats. 1973. The premise upon which *Leatherman, Scherr* and *Nelson*

597

were based is directly contrary to the declared purpose of the 1973 amendment.

This court never had an opportunity to determine the effect of the 1971 or 1973 amendment on the *Leatherman, Scherr* and *Nelson* cases. The Legislative Council specifically noted, however, that the 1973 amendment was a response to the *Leatherman* decision. The Council Note to sec. 204.30, Stats. 1973 states:

> "This bill clarifies the purpose of uninsured motorist coverage to place the insured in the same position he would have been if the uninsured motorist were insured. It is the result of the Wisconsin Supreme Court decision in Leatherman v. American Family Mutual Insurance Company (1971), 52 Wis. 2d 644.
>
> "In Leatherman the court upheld the validity of policy provisions relating to uninsured motorist coverage. The court agreed with the insurer's position that these provisions required the insurer to pay the amount the insured was legally entitled to recover as damages from the owner or operator of an uninsured automobile, but reduced this amount by payments recovered from anyone jointly or severally liable for the accident even if the payments did not cover any portion of the uninsured motorist's share of the liability.
>
> "At the time of the [Leatherman] accident, Wisconsin had no statute relating to the uninsured motorist coverage. In 1965, Wis. Stat. s. 204.30 (5) was enacted, requiring uninsured motorist coverage as part of automobile liability policies, unless rejected by the insured. In 1971 the coverage became mandatory as part of all automobile liability policies. This bill would make certain that the

reduction in coverage permitted in *Leatherman* would not occur under the amended statute."

The 1973 statute was again amended in 1975 as part of a major revision of the insurance laws. The legislature deleted the above quoted language which had been added to the statute in 1973. The 1975 statute (sec. 204.30) was recodified as sec. 632.32(3)(a)—which was later renumbered to the present sec. 632.32(4)(a). Ch. 375, Laws of 1975. The legislative council committee comments of 1975 and 1979 to sec. 632.32(4)(a) make clear that the 1975 revision deleting the 1973 language was not intended to change the meaning of the 1973 statute. The 1973 Committee Comment states: "In sub. (3)(a) [later (4)(a)] the final sentence of s. 204.30(5)(a) is omitted [because i]t does not seem to add anything." Committee Comment—1975 to sec. 632.32, Wis. Stats. Ann. (1980). The 1979 Committee Comment states that "Subsection (4) continues former sub. (3) ... with major editorial changes but without intended change of meaning ...." Committee Comment—1979 to sec. 632.32, Wis. Stats. Ann. (1980).

██

We conclude from this legislative history that although the present statute does not include the language added by the 1973 legislature, the legislative intent was that sec. 632.32(4)(a) be interpreted as if the 1973 language was a part of it. We therefore conclude that the *Leatherman, Scherr* and *Nelson* cases, which dealt with insurance policies written before the 1971 and 1973 amendments, are not relevant to interpreting the present statute.

Home Insurance calls our attention to *Mullen v. Coolong,* 132 Wis. 2d 440, 393 N.W.2d 110 (Ct. App.

1986), in which the court of appeals concluded that the 1975 repeal of the 1973 language meant a return to the *Leatherman* and *Scherr* decisions. The court of appeals said, "Had the supreme court felt that the spirit or intent of sec. 204.30(5)(a), Stats. (1967), required the stacking of uninsured motorist coverage, the result in *Scherr* would have been different .... If the *Leatherman* outcome could occur under the unamended sec. 204.30(5) (1967), as the supreme court held in *Scherr,* it could also occur under the parallel provisions of sec. 632.32(4)(a)1., from which the anti-*Leatherman* language has been deleted." *Mullen v. Coolong, supra,* 132 Wis. 2d at 448–52.

We disagree with and overrule the court of appeals *Mullen* decision for two principal reasons. First, the court of appeals erroneously concluded that the legislature intended the 1975 amendment to mean a return to the *Leatherman* decision. The expressed purpose of the 1975 amendment was to continue in effect the 1973 amendment which overturned the *Leatherman* decision.

Second, the court of appeals failed to analyze the *Leatherman, Scherr* and *Nelson* cases carefully. The court of appeals failed to consider that the *Leatherman* case (which predated the uninsured motorist statute) and the *Scherr* and *Nelson* cases (both of which predated compulsory uninsured motorist coverage) rejected the concept that uninsured motorist coverage guaranteed recovery equivalent to that which the injuring party would receive had the uninsured motorist been minimally insured. *Nelson,* 63 Wis. 2d at 567. This court's recent decisions under the present uninsured motorist statute make it clear

that the legislative policy behind the present statute, which is substantially similar to the 1971 statute, is to afford persons injured by an uninsured motorist the same protection the person would have had under an insured motorist. *Vidmar v. American Family Mut. Auto Ins. Co., supra,* 104 Wis. 2d at 370; *Radlein, supra,* 117 Wis. 2d at 624–25. Because the legislature has rejected the premise underlying *Leatherman, Scherr* and *Nelson,* these three cases are not valid interpretations of the present law.

Before we move on to the next issue, the court must consider one other case, namely, *Radlein v. Industrial Fire & Cas. Ins. Co.,* 117 Wis. 2d 605, 345 N.W.2d 874 (1984). Although the parties and the court of appeals were aware of and cite the *Radlein* case (on different points), neither the parties nor the court of appeals in its certification rely on *Radlein* as dispositive of the question certified in the case at bar. We discuss *Radlein,* although it is not directly on point, because there is language in the *Radlein* opinion that some may view as tangentially related to this case, even if the parties in this case and the court of appeals do not.

In *Radlein* the injured party was involved in an accident with an uninsured motorist (the driver of the car in which she was a passenger) and an "insured" motorist (Milwaukee county, which operated the bus involved in the accident). In a settlement agreement she apparently recovered a sum from Milwaukee county and $6,000 under the $15,000 uninsured motorist coverage in her husband's policy.

After the settlement, she sued the uninsured motorist carrier claiming bad faith for not paying her the full $15,000 under the uninsured motorist coverage when her injuries exceeded the total amount she

601

had recovered for all parties. The insurance carrier asserted that the suit was frivolous.

The *Radlein* court concluded that because the injured party had never established the uninsured motorist's negligence, she had not shown that she was legally entitled to the full proceeds of the uninsured motorist coverage. Consequently, the insurance company's refusal to pay the full amount under uninsured motorist coverage cannot constitute bad faith, and the suit was frivolous. As far as the holding of the case goes, the *Radlein* decision has no bearing on this case.

In the course of reaching its decision, however, the *Radlein* court discussed several factors present at the time of the settlement agreement which would have made it reasonable for the insurance company and the injured party to settle for $6,000. Among those factors was the assertion that under the rule established in the *Leatherman, Scherr* and *Nelson* cases, even if drivers of the car and bus had been found negligent, the injured party would not have been entitled to the full $15,000 uninsured coverage should she recover in excess of the uninsured motorist policy limit from Milwaukee county. In other words, the court asserted that a reducing clause could be given effect under circumstances similar to but not the same as those in this case.

We agree with the parties in this case and the court of appeals in viewing the *Radlein* discussion of the reducing clause as cursory, as incidental to the holding and, therefore, as dictum which is not useful in deciding the issue presented in this case.

The plaintiff's final argument in support of her contention that the reducing clause is invalid is that where, as in this case, the damages exceed the combined total of the separate coverages for liability

and uninsured motorist within a single policy, the reducing clause is unenforceable because it violates the legislative mandate expressed in sec. 631.43(1), Stats. 1979,[5] relating to "other insurance" provisions. Home Insurance argues that the reducing clause in this case, in contrast to the reducing clauses in several other cases involving multiple policies, does not fall within the proscription of sec. 631.43(1) because (1) this case does not involve "two ... policies" within the meaning of the statute and (2) the legislature's use of the term "indemnify" signifies that it meant the statute to apply only to indemnity provisions, not to liability provisions. We need not reach this issue in view of our holding that the Home Insurance policy reducing clause violates sec. 632.32, Stats. 1979.[6]

---

[5]Sec. 631.43(1), Stats. 1979, more commonly known as the "stacking statute," was created by sec. 41, ch. 375, Laws of 1975, and provides as follows:

"**Other Insurance Provisions** (1) GENERAL. When two or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions. The policies may by their terms define the extent to which each is primary and each excess, but if the policies shall contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage it provided. Settlement among the insurers shall not alter any rights of the insured."

[6]In *Landvatter v. Globe Security Ins. Co.*, 100 Wis. 2d 21, 26, 300 N.W.2d 875 (Ct. App. 1980), the court of appeals concluded that the enactment of sec. 631.43, Stats. 1979, provided the legislative mandate prohibiting reducing clauses which was missing at the time of the *Leatherman, Scherr* and *Nelson* cases. Accordingly, the court applied sec. 631.43(1) in conjunction with

■

In summary, we conclude that the reciprocal reducing clauses in the Home Insurance policy are an attempt to subvert the insurer's obligation under the statute to provide uninsured motorist coverage so that the injured party is guaranteed recovery as if the uninsured tortfeasor was minimally insured. If the legislative objective in requiring uninsured motorist coverage is to be fulfilled, the injured party must be entitled to the proceeds of uninsured motorist coverage free from any reductions contingent solely on the fact that a negligent uninsured motorist was a tortfeasor. In this case, if the uninsured motorist, Mr. Chartier, had been insured, the plaintiff would have received $15,000 from Mr. Chartier's insurer and $50,000 from Home Insurance. Home Insurance's reducing clause, which limits the plaintiff's recovery to $50,000 instead of $65,000, clearly places the plaintiff in a worse position than if Mr. Chartier had been insured.

An insurance policy may expand but not reduce the coverage required by the uninsured motorist

sec. 632.32(3), Stats. to invalidate an insurance policy clause providing that payment of its uninsured motorist benefits would be reduced by amounts paid under the uninsured motorist provisions of other policies.

The court of appeals and this court have in a number of cases interpreted sec. 631.43(1) to allow stacking. See *e.g., Burns v. Milwaukee Mut. Ins. Co.,* 121 Wis. 2d 574, 360 N.W.2d 61 (Ct. App. 1984); *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 361 N.W.2d 673 (1985); *Welch v. State Farm Mut. Auto Ins. Co.,* 122 Wis. 2d 172, 361 N.W.2d 680 (1985).

The legislative objective in sec. 631.43 is to give the injured party the aggregate protection of the insurance provisions up to the actual loss suffered by the insured. Our interpretation of sec. 632.32(4)(a) comports with sec. 631.43(1).

statute. Any policy provisions effectively reducing the coverage required by the statute are void. We therefore hold that the clause in the Home Insurance policy that seeks to reduce payments made under its liability policy by any amounts paid out under its uninsured motorist coverage is void under sec. 632.32(4)(a) and is therefore unenforceable.

### III.

The plaintiff argues that if Home Insurance is held liable for the full $50,000, she is entitled to double costs under sec. 807.01(3) and pre-judgment interest on $50,000 by virtue of sec. 807.01(4). The circuit court implicitly rejected plaintiff's position. We affirm the circuit court.

Sec. 807.01(3) provides that a plaintiff shall recover double the amount of taxable costs if the defendant does not accept plaintiff's offer of settlement and the plaintiff subsequently recovers a more favorable judgment. Sec. 807.01(3) requires the plaintiff to serve "upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified with costs" within the time specified, namely, "after issue is joined but at least 20 days before trial." Sec. 807.01(3), Stats. 1979. Plaintiff asserts that her letter dated September 20, 1983, satisfied sec. 807.01(3). We shall examine this letter in our discussion of plaintiff's claim under sec. 807.01(4).

Sec. 807.01(4), Stats. 1979, provides for pre-judgment interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid under the following conditions:

"*If there is an offer of settlement by a party under this section* which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04(4) and 815.05(8)." (Emphasis added.)

The plaintiff asserts that the offer of settlement for $50,000 which she made in September 1980, before she filed this action, satisfies sec. 807.01(4), entitling her to pre-judgment interest from September 1980. We conclude that the plaintiff's interpretation of sec. 807.01(4) is erroneous.

The operative language of sec. 807.01(4) clearly indicates that an offer of settlement under sec. 807.01(4) must be made under sec. 807.01. The only reference in sec. 807.01 to an offer of settlement by a plaintiff appears in sec. 807.01(3). Looking at 807.01 as a whole and sec. 807.01(3) specifically, we conclude that to be entitled to the 12% statutory interest under sec. 807.01(4), the plaintiff must have made an offer of settlement within the meaning of sec. 807.01(3). Sec. 807.01(3) makes it clear that the plaintiff's offer of settlement must be in writing and must be made "[a]fter issue is joined but at least 20 days before the trial." In addition, the offer for settlement must state that it is "for the sum, or property or to the effect therein specified, with costs." Sec. 807.01(3). We therefore conclude that the September 1980 letter

which was sent before the action was commenced does not constitute an offer under sec. 807.01(4).

Plaintiff's complaint was filed on May 18, 1983 and the issue was joined soon thereafter. The only written communication by the plaintiff to Home Insurance which the plaintiff asserts meets the three requirements set forth in sec. 807.01(4) is her letter dated September 20, 1983. The plaintiff sent this letter after issue was joined and at least 20 days before the trial. The letter is captioned "Formal Demand for Uninsured Motorist Benefits" and states that it is a "formal demand ... to unconditionally pay forthwith its limit of uninsured motorist coverage ... in the amount of $15,000." The letter refers to a February 23, 1983, letter which preceded the filing of the action, demanding the maximum liability limit of $50,000 for liability coverage. The plaintiff asserts that a copy of the February 23 letter accompanied the September 20 letter. The plaintiff reads the two letters together as one offer for settlement of both the $50,000 liability coverage and the $15,000 uninsured motorist coverage plus costs. Home Insurance disagrees.

■■

We have reviewed these two letters and the extensive correspondence between the parties after the September 20, 1983, letter. We conclude that the September 20, 1983, letter does not qualify as an offer of settlement for $50,000 plus costs for the purposes of sec. 807.01(3) and (4). The September 20 letter is entitled "Separate, Formal Demand for Uninsured Motorist Benefits" and does in fact demand $15,000 from Home Insurance in payment of the uninsured motorist benefits. The letter merely makes reference to the February 28, 1983, letter. The September 20 letter describes the February letter as one in which

the plaintiff "formally demanded the maximum liability limit of $50,000 for liability coverage." The letter does not state that a copy of the February 28 letter was enclosed. Furthermore there is nothing in the September 20 letter which renews the plaintiff's demand for $50,000. Because the original demand for $50,000 was made before issue was joined and there was no subsequent renewal of that offer after issue was joined, we conclude that there was no offer of settlement for $50,000 satisfying the requirements of sec. 807.01. Accordingly, the plaintiff is not entitled to pre-judgment interest or double costs under the statute.

In the alternative, the plaintiff claims that she is entitled to pre-judgment interest under the common law. Home Insurance, however, claims that this issue is controlled by *Johnson v. Pearson Agri-Systems, Inc.,* 119 Wis. 2d 766, 350 N.W.2d 127 (1984), in which this court rejected a claim for pre-judgment interest in a personal injury action on the grounds that damages must be liquidated or liquidable in order for pre-judgment interest to be awarded. *Id.* at 771. With minor modifications, this has been the established rule in Wisconsin since 1899. See *Laycock v. Parker,* 103 Wis. 161, 79 N.W. 327 (1899).

Both the plaintiff and the amicus, Wisconsin Academy of Trial Lawyers, are asking us to treat the plaintiff's case as a claim against Home Insurance for its maximum potential liability under its policy rather than as a typical personal injury claim for the plaintiff's total damages. The argument is that the former is a liquidated amount or a determinable or liquidable amount because Home Insurance has a reasonable basis for knowing in advance how much its

maximum exposure would be. The amicus argues that this court should adopt a standard that requires an insurance company to pay interest on its policy limit when a verdict exceeds that limit or, alternatively, where it was reasonably likely that the damages would exceed the policy limits. This, they argue, would give insurance companies the incentive to pay valid claims promptly and would compensate plaintiffs for the use of the money to which they were entitled from the time of the accident.

This is a case in which Home Insurance's ultimate liability for the plaintiff's personal injuries was clearly limited by the terms of its policy. In addition, as the jury determined, the plaintiff's damages were far in excess of the policy limits (whether policy limits are $50,000 or $65,000). Since before *Laycock*, this court has acknowledged the existence of an equitable argument for requiring a defendant to pay for the use of money or property, which the plaintiff recovers in a damage award between the time of the accident and the time of trial.

In *Johnson*, this court considered the equitable arguments. In a divided vote the court refused to accept the equitable argument, reasoning that the subject is best left to the legislature. We decline at this time to modify the *Johnson* rule to draw the distinctions which the plaintiff and the amicus urge.

On appeal the plaintiff has raised for the first time the issue of post-verdict interest against Home Insurance on the entire $591,000 verdict. This claim rests on a provision in Part A of Home Insurance's policy which provides that Home Insurance will pay, in addition to its limit of liability, all "defense costs" beyond the policy limits. The plaintiff did not raise

this claim in any of the earlier proceedings and Home Insurance has not responded to this claim on appeal. We are unwilling to consider this issue which was raised for the first time on appeal. If the issue can be raised at all, and we do not decide whether it can be, it must be raised at the circuit court on remand.

In conclusion, we affirm the circuit court's denial of the plaintiff's claims for pre-judgment interest and double costs and remand this case to the circuit court with directions to modify the judgment to be in the sum of $50,000 plus costs in lieu of the sum of $35,000 plus costs consistent with this opinion.

For the reasons set forth, that part of the judgment awarding the plaintiff $35,000 is reversed and the cause is remanded to the circuit court to enter judgment in the sum of $50,000. That part of the judgment denying double costs and pre-verdict interest is affirmed.

*By the Court.*—The judgment of the circuit court is affirmed in part and reversed in part and remanded with directions.

STEINMETZ, J. (*dissenting*). The majority position is not supported by the facts of the case, this court's prior decisions regarding reducing clauses, or the plain language and intent of secs. 631.43(1) and 632.32, Stats. (1979–80). This case involves a reducing clause that is clearly governed by sec. 631.43. Although the reducing clause[1] is located in the unin-

[1]The policy in the uninsured motorists section states:

"Any payment under this [uninsured motorists] coverage will reduce any amount that person is entitled to recover for the same damages under Part A." (Part A is entitled liability coverage.)

Although the majority cites the *reciprocal* of this clause, which reduces the limits of uninsured motorist coverage for payments made

sured motorist section of the policy, it does not affect or reduce any funds paid under that section of the policy.

The facts indicate that the plaintiff received the full policy limits of the uninsured motorist portion of the policy, and those policy limits fully complied with the requirements of sec. 632.32(4)(a), Stats. at the time the policy was issued. As sec. 632.32(4)(a) deals specifically with the issuance of uninsured motorist coverages in policies, and the insurer clearly paid all uninsured motorist benefits to the required statutory policy minimums ($15,000) even before the litigation was started, Home Mutual did not violate sec. 632.32(4)(a), and the reducing clause Home Mutual relied on cannot be voided under that section. The only other statutory section that deals with reducing clauses, sec. 631.43(1), invalidates some reducing clauses but not all. As later explained in this dissent, the majority cannot rely on sec. 631.43(1) to void this reducing clause, so the majority simply refuses to discuss its controlling nature.

To consider the issue the majority reaches, the facts of this case would have to be completely reversed. Home Mutual would have to have paid its

under the liability policy, the reciprocal reducing clause cannot be invoked under these facts, is completely severable from the reducing clause stated in this footnote and was not relied on by Home Mutual in requesting a reduction in the judgment. In fact, the very question certified by the court of appeals does not request a ruling on the application of the reciprocal clause in this case. " 'When an insurance policy contains a provision which accords uninsured motorist (UM) coverage to a passenger in an insured's vehicle and also contains a reducing clause which states that *any payment under the UM coverage* will reduce any recovery for the same damages *under the liability coverage....*' " (Majority opinion at pages 585, 586.)

$50,000 in liability coverage before the trial took place rather than its $15,000 in uninsured motorist coverage. Then, the plaintiff would have had to sue for the uninsured motorists coverage. Home Mutual would then have raised the other reducing clause as a defense—the clause that reduced uninsured motorist benefits because of a payment in liability coverage. Plainly, this did not take place, and there is no reason to invoke sec. 632.32(4)(a), Stats.

As far as the liability coverage is concerned, the plaintiff is not an "insured" under the policy but a third party claimant and has no standing to complain about a reduction in liability policy limits unless those limits were less than the statutory minimum when the policy was issued, or if the plaintiff received less benefit than a named insured would receive under the same circumstances. These liability policy limits were greater than the statutory minimum even after they were reduced by the reducing clause.[2] The majority completely ignores the fact that there are no limitations on the insurer as to the amount of liability coverage required. Since the reducing clause in ques-

---

[2]Section 632.32, Stats., required $15,000 minimum uninsured motorist limits for the injuries of one person and $30,000 per accident. Although there is *no* minimum limit that liability policies must meet under sec. 632.32(4)(a) (and no restriction on the insurer issuing the policy, a policy could not be considered "proof of financial responsibility" under sec. 344.01(2)(d) and 344.15(1), unless the liability policy as issued provided $15,000 per person/$30,000 per accident liability limits.

The Garcia policy provided $50,000 per person, $100,000 per accident liability coverage. After it was reduced by the uninsured motorist payment, the policy paid $35,000 in liability coverage and $15,000 in uninsured motorist benefits. Both these payments met or exceeded the statutory "minimums."

tion reduces liability coverage, not uninsured motorist coverage, sec. 632.32(4)(a), Stats., is completely inapplicable from the outset, and there is no other statute or case that would invalidate this clause.[3]

However, the majority opinion uses the "legislative intent" of sec. 632.32(4)(a), Stats., to invalidate the reducing clause. The court has repeatedly refused to invalidate reducing clauses on the basis of sec. 632.32(4)(a). As we have previously stated:

> "The issue of stacking uninsured motorist coverage was first raised in *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971) .... We found that *the reducing clause was neither ambiguous nor contrary to public policy. Id.* at 649–50. We concluded that *only the legislature could prohibit the use of reducing clauses,* not the court. *Id.* at 650–51.
>
> "Subsequently, uninsured motorist coverage became mandatory, and the same issue raised in *Leatherman* was again presented in *Scherr v. Drobac,* 53 Wis. 2d 308, 193 N.W.2d 14 (1972). This court determined that *the uninsured motorist statute,* sec. 204.30(5)(a), Stats. (1973), (predecessor to sec. 632.32) had *no effect on the validity of the reducing clause* contained in the uninsured motorist coverage. *Id.* at 310–11 ....
>
> "We found ... [in a third case, *Nelson v. Employers Mut. Casualty Co.,* 63 Wis. 2d 558, 217 N.W.2d 670 (1974)] the *Leatherman* and *Scherr* decisions ... *only guaranteed recovery of the minimum amount*

---

[3]Although there was another reducing clause that reduced *uninsured motorist coverage* located in the policy, that reducing clause was not relied on by Home Mutual and is not involved in the case. The majority here invalidates that reducing clause which was not invoked by the facts or the parties.

*of coverage* afforded for each policy and not the maximum coverage afforded by stacking several policies ....

"These cases clearly demonstrated this court's refusal to prohibit reducing clauses and extend the stacking doctrine without a *clear* legislative mandate: 'any prohibition of reducing clauses was to be made by legislative mandate and not judicial fiat.' *Landvatter v. Globe Security Ins. Co.,* 100 Wis. 2d 21, 23, 300 N.W.2d 875 (Ct. App. 1980)." *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 162–63, 361 N.W.2d 673 (1985). (Emphasis added.)

In *Tahtinen,* this court affirmed the older decisions' reasoning and changed the rule on reducing clauses only because of the passage of sec. 631.43(1), Stats.[4] *Tahtinen* states: "These cases clearly demonstrate that the validity of reducing clauses in uninsured motorist coverage is controlled by legislative mandate, not by public policy considerations." *Id.* at 164. In the present case, there is a reducing clause which is found in the uninsured motorists section of the policy. As *Tahtinen* states repeatedly, either such

[4]Sec. 631.43(1), Stats., provides as follows:

"631.43 *Other insurance provisions.* (1) General. When 2 or more policies promise to indemnify an insured against the same loss, no 'other insurance' provisions of the policy may reduce the aggregate protection of the insured below the lesser of the actual insured loss suffered by the insured or the total indemnification promised by the policies if there were no 'other insurance' provisions. The policies may be their terms define the extent to which each is primary and each excess, but if the policies contain inconsistent terms on that point, the insurers shall be jointly and severally liable to the insured on any coverage where the terms are inconsistent, each to the full amount of coverage provided. Settlement among the insurers shall not alter any rights of the insured."

a clause is prohibited by the clear language of the same statute or it is valid.

The majority concedes that clear language of sec. 632.32(4)(a), Stats., "is silent about reducing clauses; it neither authorizes nor prohibits them." Opinion at pages 591–592. Therefore, sec. 632.32(4)(a) clearly and unambigously does not prohibit reducing clauses. There is no need to resort to legislative history to determine the intent of the legislature.

*Tahtinen* correctly stated that: "Our first resort in determining the legislative intent is to the language of the statute itself. If the meaning of the statute is clear and unambiguous on its face, it is improper to employ extrinsic aids to determine the meaning intended." *Id.* at 166. (Citations omitted.) The majority fails to even pay lip service to this cardinal rule of statutory construction; the majority ignores it completely.[5] Clearly, the majority can find no ambiguity in silence, so time honored rules are bent to reach the desired result.

Nor is silence in sec. 632.32(4)(a), Stats. at all surprising, given the existence of sec. 631.43(1) which clearly deals with reducing clauses. However, since sec. 631.43(1) cannot give the result the majority desires, it resorts to sec. 632.32(4)(a). The majority, while addressing every other argument raised by the parties, states it "need not reach this issue." Opinion at page 603. The majority does not make the hard

[5]It is interesting to note that the same majority that in *Tahtinen* absolutely refused to examine the statutory history of sec. 631.43, Stats., in the absence of ambiguity here endorse such a method, even though examination of the legislative history of sec. 631.43, shows that the *Tahtinen* outcome was contrary to that history. In this case the legislative history does not lead to any clear result, and the statute is "silent" on the subject.

choice of attempting to explain why the plain language of sec. 631.43(1) does not control because it cannot give an explanation. Instead, the majority reforms the plain language of sec. 631.43(1) and states in a footnote the "legislative objective" of that statute and gratuitously concludes that "[o]ur interpretation of sec. 632.32(4)(a) comports with sec. 631.43(1)" as reformed. Opinion at pages 589–590.

Since sec. 631.43(1), Stats., clearly deals with the subject of reducing clauses and sec. 632.32 is silent on the subject of reducing clauses, there must be a reason the majority is willing to delve into the legislative history of sec. 632.32(4)(a) to resolve the problem and refuse to examine sec. 631.43(1) at all. The reason can only be that the majority does not like the result that analysis of sec. 631.43(1) leads to: the reducing clause is not void. Section 631.43(1) is clearly the legislature's mandate on reducing clauses. However, this mandate bars reducing clauses only where one reducing clause in one policy reduces coverage in another policy. Since sec. 631.43(1) uses the plural "policies," it cannot void a reducing clause that appears in one coverage of a single policy and reduces another coverage within the same policy. Because sec. 631.43(1) is the legislative mandate on reducing clauses whether they appear in accident, health, automobile or fire policies and it does not bar the instant reducing clause, the inquiry should be at an end. The legislative purpose is clear.

Although the majority relies on the legislative history of sec. 632.32, Stats., *Tahtinen* found that section did not prohibit reducing clauses in uninsured motorist policies, citing *Scherr v. Drobac,* 53 Wis. 2d 308, 193 N.W.2d 14 (1972). *Tahtinen,* 122 Wis. 2d at 163. Since an argument that sec. 632.32(4)(a) allowed stacking was raised in the *Tahtinen* briefs (amicus

curiae brief of Wisconsin Academy of Trial Lawyers at 2), this statement was not dicta, and should be dealt with by the majority or overruled.

Even if the majority can find an ambiguity in sec. 632.32(4)(a), Stats., and distinguish *Tahtinen's* holding that sec. 632.32(4)(a) does not affect stacking, the legislative history the majority relies on does not logically lead to an invalidation of the clause as the majority contends it does.

It is true that sec. 204.30(5)(a), Stats., was amended in 1973 to state:

> "The uninsured motorist bodily injury coverage limits provided in an automobile liability or motor vehicle liability policy of insurance as required in this subsection shall not be reduced by the terms thereof to provide the insured with *less protection* than would be afforded him if he were injured by a motorist insured under an *automobile liability policy of insurance containing the limits provided in this subsection."* (Emphasis added.)

Although the majority attempts to make the facts appear otherwise, the reducing clause of the instant policy only reduced liability coverage, not uninsured motorist coverage. Therefore, even if the 1973 amendment were a part of sec. 632.32(4)(a), Stats., today, the amendment would not invalidate this reducing clause.

Even assuming the facts were reversed with the liability coverage being paid out first and the uninsured motorist coverage being reduced, the plaintiff would still receive at least $15,000 in coverage. The difference is that the coverage would be coming from the liability portion of the policy rather than the uninsured motorist portion of the policy. The amendment does not indicate that it considers situations

617

where there is an additional liability policy from which recovery is available. The whole tenor of the act and the amendment is to prevent any person insured under uninsured motorist coverage from lacking any source of recovery due to a reducing clause.

The Legislative Council Note in the 1973 amendment states that the bill "'would make certain that the reduction in coverage permitted in Leatherman would not occur under the amended statute.'" Opinion at pages 598–599. However, the reduction in coverage that occurred in *Leatherman v. American Family Mut. Ins. Co.*, 52 Wis. 2d 644, 190 N.W.2d 904 (1971) was a reduction in proceeds or insurance that came from outside the four corners of the policy. Since the facts of *Leatherman* are the only reference point of the intent of the 1973 amendment, and the facts of *Leatherman* involve an extra-contractual reducing clause, there is no way the majority can rely on the amendment to justify voiding a reducing clause that affects coverages inside the policy.

The present reducing clause does not really reduce coverage, it states overall policy limits on the occurrence of specific circumstances. Home Mutual could rewrite its policy to state that it offers $35,000 in liability coverage, but in the event that no uninsured motorist proceeds are paid, the liability coverage for any single person shall be $50,000. This has the same contractual effect as the so-called reducing clause and accomplishes the same purposes, but could not run afoul of the majority rule because it actually increases the liability coverage on the occurrence of a specified event, non-payment of uninsured motorist funds.

This 1973 amendment was repealed in 1975, as part of a general revision of the statutes in Chapter 375, Laws of 1975. The committee noted the amend-

ment "does not seem to add anything." The majority seems to read this as preserving some sort of prior intent; it can also be read as rendering any prior effect of the amendment moot for lack of meaning. If it indeed added to the meaning of the intent of the former section, nothing could be gained by repealing the sentence. It seems strange the majority relies heavily on an amendment repealed because it added nothing. Truly, the search for legislative intent has led to grasping at straws.

Section 631.43(1), Stats. was also created by Chapter 375, Laws of 1975. While its meaning was found to be clear in *Tahtinen,* the Legislative Committee Note to that section states:

> "The most important objective of the law is to give the insured full protection with minimum difficulty and joint and several liability does that. The insurer*s* may then settle accounts among themselves. *They* will usually be able to do so by agreement. If *they* cannot, a court can do so first by interpreting the terms of the *policies* and, where they are inconsistent, applying restitutionary principles. In the past 'other insurance' clauses have often done injustice; *that fact was the reason for the enactment of statutes like s. 203.11* [fire insurance chapter, 1973 Stats.]. Courts have dealt with these problems with reasonably good results even in the absence of such a provision, and there is no reason to doubt that they can do justice as *between* the insurers, once the insured has received full indemnity." (Emphasis added.)

The presence of sec. 631.43(1), Stats., and the comment after it make two things clear: the legislature positively enacted a mandate that would void reducing clauses that effected coverage outside of a

single policy, and the legislature could have extended this mandate to include reduction between coverages in a single policy but did not. This directly contradicts the majority conclusion in footnote 6 that its interpretation of sec. 632.32(4)(a) "comports with sec. 631.43(1)." The enactment of 631.43(1) in the same chapter that the 1973 amendment to sec. 632.32(4)(a) was repealed suggests that the 1973 amendment did not add anything because the *Leatherman* problem was then clearly covered by sec. 631.43(1). Since sec. 631.43 broadly deals with other insurance clauses in all forms of indemnity insurance (accident, health, homeowners, automobile medical payments) there was no longer a need for specific language in sec. 632.32(4)(a).

The majority cites additional cases that state that "'the purpose of uninsured motorists coverage is to compensate an insured who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist was insured.'" Opinion at pages 591–592. The majority theorizes that if Chartier had carried liability coverage and was negligent, the plaintiff would have recovered $50,000, $35,000 from the Garcia liability policy and $15,000 from whatever liability policy Chartier had.

I note from the record that the plaintiff, Kim Nicholson, claimed against her own uninsured motorist policy which was with American Family Insurance, in addition to the Garcia's uninsured motorist policy. Since Chartier was found to have no negligence, Nicholson could not collect under the American Family policy, unless that requirement was waived by her insurance company.

However, if Chartier would have been negligent, which is the assumption the majority relies on (op. n.

3), Nicholson would have collected both the uninsured motorist limits of her American Family policy and the uninsured motorist limits of the Garcia policy.

If Chartier had had liability insurance on one vehicle with $15,000 limits, Nicholson could have only collected $15,000 from Chartier. Under the majority decision and the rule of *Tahtinen,* Nicholson could collect $15,000 under her own uninsured motorist coverage, $15,000 under the Garcia's uninsured motorist coverage and $50,000 under the Garcia's liability coverage. Where the victim under a liability policy would recover $65,000 total, Nicholson would recover $80,000.

If Nicholson owned multiple vehicles, the distinction gets worse. If Nicholson had three vehicles with minimum coverage, those minimum coverages could be "stacked." Three minimum coverages at $15,000 each would give her $45,000 in minimum coverages under her own policies. Therefore, if Nicholson owned three vehicles, she could recover $45,000 from her own uninsured motorist policy, $15,000 from the Garcia uninsured motorist policy and $50,000 from the Garcia liability policy for a total of $110,000. If Chartier had been insured, Nicholson would only have been able to collect $15,000 from his policy and $50,000 from the Garcia's policy.

These examples show that this court, in its prior treatment of uninsured motorists coverage, has never been concerned about attempting to reach parity between those covered by liability coverage and those covered by uninsured motorist coverage. Clearly, from these examples, the ability to "stack" uninsured motorist coverages with other uninsured motorist coverages and now liability coverages puts the victim of an uninsured motorist in a much better position

than the victim of insured tortfeasors if all coverages are at low limits. Therefore, the majority rationale of treating the victim as if the tortfeasor were insured is completely faulty. Just having the opportunity to buy multiple "stackable" third party coverage places the uninsured victim in a better position.

This court has left to the legislature by its decisions in the past the public policy area of reducing clauses, in all their forms. The legislature clearly has not barred reducing clauses that reduce one coverage within a single policy. The majority decision distorts the facts of this case, the prior case law of this court and the plain language and intent of the statutes to void this reducing clause. Accordingly, I dissent.